Keith VIGIL, Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 92–247.

Supreme Court of Wyoming.

Sept. 21, 1993.

Leonard D. Munker, State Public Defender, Deborah Cornia, Asst. Public Defender, Gerald M. Gallivan, Director, Defender Aid Program, and John Fenn, Student Intern, for appellant.

Joseph B. Meyer, Atty. Gen., Sylvia L. Hackl, Deputy Atty. Gen., Barbara L. Boyer, and D. Michael Pauling, Sr. Asst. Atty. Gen., for appellee.

Before MACY, C.J., and THOMAS, CARDINE, GOLDEN and TAYLOR, JJ.

TAYLOR, Justice.

Keith Vigil (Vigil) appeals his conviction for involuntary manslaughter following the death of a nineteen-month-old infant in his care. Although Vigil raises a number of issues, our primary focus involves one obsolete jury instruction as derived from the Wyoming Pattern Jury Instructions–Criminal as published in 1978. We reverse and remand because the jury instruction misstated the essential elements of the crime of involuntary manslaughter as presently enacted by the Wyoming State Legislature.

Vigil raises these issues:

I. Whether the district court committed plain error by submitting jury instructions failing to define the essential elements of the crime of manslaughter?

II. Whether the jury instructions presented caused the jury's decision to be ambiguous and possibly precipitated the finding of guilty of criminal negligence instead of manslaughter?

III. Whether the state committed prosecutorial misconduct by bringing the highly prejudicial charge of sexual assault without sufficient cause?

IV. Whether the prosecution's use of a peremptory challenge to exclude a hispanic from the jury was improper and denied appellant his right to a fair and impartial jury in violation of the Sixth Amendment of the United States Constitution?

V. Whether the district court erred by denying a motion to suppress coerced statements made by appellant * * * during interrogations by the police on December 3, 1991, and December 18, 1991?

## I. FACTS

Vigil shared a home in Cheyenne, Wyoming with the mother of nineteen-month-old Chaundel Kohute (Chaundel). When Chaundel's mother went to work on November 3, 1991, she left Chaundel in Vigil's care. After meeting the mother briefly around 10:30 a.m., Vigil and Chaundel spent the rest of the morning at the home of Chaundel's maternal grandparents. After watching television for a time, Vigil took Chaundel back to their home around noon.

Vigil and Chaundel were alone for approximately one-half hour before Vigil walked to a neighbor's home with an unconscious Chaundel in his arms. While Vigil telephoned emergency personnel, the neighbor attempted to resuscitate Chaundel. Unsuccessful efforts to save Chaundel's life continued at a Cheyenne hospital and at Children's Hospital in Denver, Colorado.

During the investigation, Vigil initially claimed that he heard Chaundel fall and returned from another room to find her choking. In later descriptions, Vigil maintained that Chaundel had slipped out of his arms as he removed her coat and had fallen backwards hitting a coffee table. Vigil was charged with murder in the second degree, Wyo.Stat. § 6–2–104 (1988), and sexual assault in the first degree, Wyo. Stat. § 6–2–302(a)(i) (1988). At a jury trial, Vigil was found not guilty of sexual assault and guilty of the lesser included offense of manslaughter.

## II. DISCUSSION

### A. *Jury Instructions*

Vigil asserts that the jury instruction, concerning the lesser included offense of manslaughter, was fundamentally defective and, therefore, plain error. Instruction No. 4 provided, in part:

The Jury may find the Defendant guilty of any lesser crime which is includ-

ed in the principal crime charged whenever such a finding is consistent with the facts found by the Jury from the evidence in the case, and with the law as given in these instructions. If the Jury finds the Defendant not guilty of the crime of second degree murder, then the Jury must proceed to determine the guilt or innocence of the defendant as to any lesser crime included in second degree murder. If you find the Defendant not guilty of second degree murder, you will then determine whether he is or is not guilty of the included crime of manslaughter.

Section 6–4–107, Wyoming Statutes, 1977,[1] defines manslaughter and reads, in part, as follows:

"Whoever unlawfully kills any human being without malice, expressed or implied, either voluntary upon a sudden heat of passion, or involuntarily, but in the commission of some unlawful act, or by any *culpable neglect or criminal carelessness,* is guilty of manslaughter . . ."

The essential elements of the charge of manslaughter which must be proven are:

1. That the Defendant committed acts on or about November 3, 1991, which killed Chaundel Kohute.

2. That the killing was either done voluntarily, upon a sudden heat of passion; or involuntarily by *culpable neglect, or by criminal carelessness.*

3. That the killing occurred in Laramie County, Wyoming.

(Emphasis added.) Vigil argues that the jury instruction does not accurately reflect the applicable elements of the crime of manslaughter. The manslaughter statute, which applies to Vigil and exists today, provides:

(a) A person is guilty of manslaughter if he unlawfully kills any human being without malice, expressed or implied, either:

---

1. Wyo.Stat. § 6–4–107 (1977) was repealed by the passage of Wyo.Stat. § 6–2–105 in 1982. Wyo.Sess.Laws ch. 75, § 3 (1982). In 1983, the legislature replaced the terms *culpable neglect*

and *criminal carelessness* with the term *recklessly* in Wyo.Stat. § 6–2–105. Wyo.Sess.Laws ch. 171, § 1 (1983).

(i) Voluntarily, upon a sudden heat of passion; or

(ii) Involuntarily, but *recklessly* except under circumstances constituting a violation of W.S. 6–2–106(b).

Wyo.Stat. § 6–2–105 (1988) (emphasis added). The jury instruction was based on the previous version of the manslaughter statute which used the terms *culpable neglect* and *criminal carelessness* instead of *recklessly.*

■ Both parties agree that because Vigil failed to properly object to Instruction No. 4, we may only review the jury instruction for plain error. *See Gore v. State,* 627 P.2d 1384, 1388–89 (Wyo.1981). To establish plain error, the following must be demonstrated:

"It must be clear from the record, without resort to speculation or equivocal reference, exactly what occurred at trial. The proponent of the doctrine [plain error] must demonstrate the existence of a clear and unequivocal rule of law; and the particular facts of the case must clearly and obviously, not just arguably, transgress that rule. Finally, once these criteria have been met, it must be shown that some substantial right of the accused has been adversely affected. These criteria apply even when constitutional error is alleged; and unless each one of them is satisfied, any claim for review under the plain-error doctrine must fail."

*Russell v. State,* 851 P.2d 1274, 1278 (Wyo. 1993) (quoting *Gresham v. State,* 708 P.2d 49, 55 (Wyo.1985)).

■ There is no question as to what occurred at trial. The trial judge instructed the jury on the elements of the crime of involuntary manslaughter, but substituted the terms *culpable neglect* and *criminal carelessness* for *recklessness.* This amounts to an obvious transgression of the requirement that the trial judge must instruct the jury on the necessary elements of the crime charged. *Sanchez v. State,* 751 P.2d 1300, 1307 (Wyo.1988); *Horn v. State,* 554 P.2d 1141, 1143 (Wyo.1976).

In addition, this instructional error adversely affected one of Vigil's substantial rights. Vigil, as the accused in a criminal prosecution, can only be convicted upon proof beyond a reasonable doubt of each element of the crime charged. *Stuebgen v. State,* 548 P.2d 870, 879 (Wyo.1976); *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Clearly, the jury did not find that the State had proven that Vigil acted *recklessly* beyond a reasonable doubt because the jury was not instructed that *recklessly* was an element of involuntary manslaughter. Hence, Vigil's right, to only be convicted based on a finding of proof beyond a reasonable doubt of each element of the crime charged, was denied.

Therefore, because the manslaughter instruction neglected to include an essential element of the crime for which Vigil was convicted, we hold that the trial court committed plain error. This court is certainly not alone in declaring the existence of plain error under these circumstances. The United States Court of Appeals for the Seventh Circuit indicated that "[s]tate and federal courts alike have long recognized that the failure to give any instruction on an essential element of a criminal offense is fundamental error, requiring reversal of the defendant's conviction." *Cole v. Young,* 817 F.2d 412, 423 (7th Cir.1987). *See also* 2 Charles Alan Wright, *Federal Practice and Procedure: Criminal 2d* § 487, at 723 (1982).

Instruction No. 4 was derived from the Wyoming Pattern Jury Instructions–Criminal §§ 7.501, 7.502 and 7.503 (1978). The current Criminal Pattern Jury Instructions were published by the Wyoming State Bar in 1978. To put the date of publication in some perspective, Justice Cardine, then practicing in Casper, Wyoming, was a prominent member of the committee responsible for formulating the pattern instructions. During the ensuing years, criminal law and procedure in Wyoming have changed in many areas, both as a result of legislative action and as a result of decisions of this court and the Supreme Court of the United States.

■ The Wyoming State Bar has, in place, a standing committee whose purpose "is to periodically review the criminal pattern jury instructions to ensure that they accurately reflect Wyoming law." Wyoming State Bar Directory 130 (1993). It appears that the Criminal Pattern Jury Instructions have not been reviewed or updated since their publication in 1978. To avoid the unfortunate circumstance which occurred here, the Wyoming State Bar committee is urged to undertake the revision of the Criminal Pattern Jury Instructions and, upon completion, meet regularly thereafter to ensure that updated legal authority is incorporated in its work. Until such revisions have been accomplished, the trial bench and bar should view the existing Criminal Pattern Jury Instructions with circumspection.

■ Under W.R.Cr.P. 30, any party in a criminal proceeding may file written requests that the trial court instruct the jury on the law as set forth in the requests. As a part of such written requests, citation of authority shall be included with the proffered instruction delivered to the trial judge. The citation must be specific enough to inform the trial court of the legal sufficiency for the instruction, such as reference to the relevant statutory provision, precedent, treatise, or other authority from which the suggested language is quoted or derived. These offered instructions from both prosecution and defense, with citations to prevailing law, are then to be made a part of the record on appeal along with the instructions actually given by the trial court. W.R.A.P. 3.02. The instructions delivered to the jury shall not contain the citations of authority. Citation to language derived from or specifically quoted from the Wyoming Pattern Jury Instructions–Criminal (1978) will not be considered sufficient without additional attribution to current credible sources.

The State raises two additional arguments supporting Vigil's conviction despite the existence of plain error. First, the State argues that the jury instructions, taken as a whole, cured whatever defect existed in Instruction No. 4. Second, the State claims that the doctrine of invited error precludes our review of Instruction No. 4.

■ The State alleges that Instruction No. 6 cured the failure to include *recklessly* in Instruction No. 4. Instruction No. 6 provided:

Involuntary manslaughter is the unlawful killing of a human being by culpable neglect, or by criminal carelessness, without malice and without an intent to kill.

The question to be answered in determining whether a killing was involuntary manslaughter rather than murder is as follows:

Did the defendant kill the decedent through criminal negligence?

The terms "culpable neglect" and "criminal carelessness" as used in the statute are synonymous and mean the same as "criminal negligence". Criminal negligence is more than mere negligence, thoughtlessness or slight carelessness. It is negligence of such gross or flagrant character as would show a *wanton or reckless disregard for the life,* rights, or safety of others that is equivalent to criminal intent, under circumstances in which the Defendant, acting as an ordinary, reasonable person, could have reasonably foreseen that death or injury would be the probable result.

(Emphasis added.) The State claims that because Instruction No. 6 equates *culpable neglect* and *criminal negligence* with *wanton and reckless disregard of life,* the jury was properly advised of the necessary elements for involuntary manslaughter.

■ When we examine jury instructions, we must look at them in their entirety and read them together. *Ostrowski v. State,* 665 P.2d 471, 487 (Wyo.1983). An error in one jury instruction can be cured elsewhere in the jury instructions if "the correct information is conveyed to the jury in a clear and concise manner so that it is unlikely that an erroneous impression would remain in the minds of the jurors." *United States v. Pope,* 561 F.2d 663, 670 (6th Cir.1977) (citing *United States v. Park,* 421 U.S. 658, 674, 95 S.Ct. 1903, 1912, 44 L.Ed.2d 489

(1975) and *Cupp v. Naughten,* 414 U.S. 141, 146–47, 94 S.Ct. 396, 400–01, 38 L.Ed.2d 368 (1973)). In reviewing Instructions No. 4 and No. 6, we find that Instruction No. 6 did not clearly and concisely inform the jury that *recklessly* was an element of involuntary manslaughter.

The term *recklessly,* as defined in our criminal statutes, is significantly different from the definitions of *culpable neglect* and *criminal carelessness* given in Instruction No. 6. Our criminal statutes define *recklessly* as follows:

> A person acts recklessly when he *consciously disregards* a substantial and unjustifiable risk that the harm he is accused of causing will occur, and the harm results. The risk shall be of such nature and degree that disregarding it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation[.]

Wyo.Stat. § 6–1–104(a)(ix) (1988). Instruction No. 6 did not clearly advise the jury that in order to find Vigil guilty of involuntary manslaughter, they must find that he acted with *conscious disregard.* To act with *conscious disregard* implies intentional acts despite knowledge of the risk, while acting with *wanton disregard* implies acts done without conscious regard or heedlessly. Therefore, the jury instructions as a whole could only create confusion in the minds of the jurors as to what actions would constitute the crime.

■ In addition, the State claims that because Instructions No. 4 and No. 6 were proffered by Vigil, the doctrine of invited error precludes reversal based on plain error. The doctrine of invited error says "if a party induces action by a court, the party cannot argue error because the court took such action. * * * Invited errors will not normally be grounds for reversal unless they go beyond a pertinent reply or are necessarily prejudicial." *Engle v. State,* 821 P.2d 1285, 1287 (Wyo.1991). As we stated previously, the jury instruction's neglect of the essential element of *recklessly* is prejudicial because it potentially allowed Vigil to be convicted of involuntary manslaughter without proof beyond a reason-

able doubt of all elements of the crime. Because the error was necessarily prejudicial, the doctrine of invited error does not preclude review and reversal. Furthermore, inaccurate jury instructions on a specifically repealed statute, resulting in a possible conviction without proof beyond a reasonable doubt of all present elements of a crime, cannot be excused as invited error or harmless error. *Sullivan v. Louisiana,* —— U.S. ——, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993).

### B. *Other Issues*

Since the State may pursue re-prosecution of Vigil for involuntary manslaughter, we will briefly analyze those issues raised by Vigil which could potentially recur. The only remaining issue which would likely reappear upon retrial concerns two statements Vigil made to the Cheyenne police before his arrest. Vigil asserts that the trial court erred in denying his motion to suppress because the statements were the result of coercion and, therefore, involuntary.

■ " 'In determining whether statements made by an accused are voluntary, the totality of the circumstances surrounding the interrogation must be examined.' " *Black v. State,* 820 P.2d 969, 971 (Wyo. 1991) (quoting *Frias v. State,* 722 P.2d 135, 141 (Wyo.1986)). Statements are made voluntarily if they are " ' "the product of a free and deliberate choice rather than intimidation, coercion, or deception." ' " *Rude v. State,* 851 P.2d 20, 23 (Wyo.1993) (quoting *Frias,* 722 P.2d at 142 and *Moran v. Burbine,* 475 U.S. 412, 421, 106 S.Ct. 1135, 1141, 89 L.Ed.2d 410 (1986)).

On December 3, 1991, one month after Chaundel's death, Vigil voluntarily accompanied Detective Donald Farmer (Farmer) of the Cheyenne Police Department to the police station. At the police station, Farmer and fellow Detective Reese interviewed Vigil concerning what had transpired on November 3, 1991 when Chaundel stopped breathing. Vigil related the same story he had previously reported to the police.

Approximately two weeks later, on December 18, 1991, Vigil again voluntarily returned to the police station at the request of Detectives Reese and Farmer. On this occasion, however, Vigil was read his Miranda rights, which he subsequently waived. During this second interview, Detective Reese made the following statement to Vigil:

> No, if you don't want to help us out and help yourself out, I'm going to make sure that I end my career here on this Police Department which won't be long, alright, of finding out why. And if you don't want to cooperate with us, then that's telling me one thing. That means you * * * purposely did this to this child on purposely [sic]. That's the only reason ...

Soon after this statement, Vigil requested to speak with Detective Reese alone and, thus, Detective Farmer left the interrogation room for an unknown period of time. While Detective Reese and Vigil were alone, Vigil related to Detective Reese a new version of the events which led to the death of Chaundel. In the second version, Vigil told Detective Reese that Chaundel accidently slipped from his arms and struck her head on the coffee table, instead of falling on her own.

Vigil claims that Detective Reese's statement concerning spending the remainder of his career pursuing the truth behind Chaundel's death combined with Reese's tone of voice were coercive in nature and, therefore, the second version of events related by Vigil should be suppressed. After reviewing the transcripts of both the December 3 and 18, 1991 interviews and listening to the tapes of the interviews, we feel that Detective Reese's statement was not improperly coercive, threatening or intimidating.

Detective Reese's statement was not coercive or threatening; instead, it was an expression of Detective Reese's profound desire to elicit the truth concerning Chaundel's death. This is not a case where the accused was "confronted with a barrage of accusations and threats" and "repeatedly accused * * * of lying." *Frias*, 722 P.2d

at 143 (accused's statements were ruled the product of police coercion). Nor is it a case where the police took advantage of an accused's obvious and profound vulnerabilities in order to elicit a confession. *Black*, 820 P.2d at 971–72 (police coercion existed where police interrogated extremely pregnant and emotionally upset suspect for two hours). Therefore, the trial court properly denied Vigil's motion to suppress his statements made at the December 18, 1991 interview.

### III. CONCLUSION

We hold that the trial court committed plain error by giving a jury instruction which omitted the necessary element of *recklessly* for the crime of manslaughter. We reverse and remand.