Wesley WILSON, Appellant (Defendant),

v.

The STATE of Wyoming, Appellee (Plaintiff).

No. 99–162.

Supreme Court of Wyoming.

Dec. 22, 2000.

Representing Appellant: Sylvia L. Hackl, State Public Defender; Donna D. Domonkos, Appellate Counsel; and Ryan R. Roden, Assistant Appellate Counsel.

Representing Appellee: Gay Woodhouse, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Kimberly A. Baker, Senior Assistant Attorney General.

Before LEHMAN, C.J., and THOMAS, GOLDEN, HILL, and KITE, JJ.

THOMAS, Justice.

The most significant of the issues presented in this appeal by Wesley Wilson (Wilson), from his conviction for aggravated assault and battery, is found in his claim that the district court erred in refusing a proffered jury instruction on the statutory definition of "serious bodily injury." He also urges, as appropriate, alternative grounds for reversal, that a lapse of 140 days between his arraignment and his trial violated his constitutional right to a speedy trial, as well as the dictates of W.R.Cr.P. 48(b), and that the district court erred in admitting evidence of his prior bad acts. We conclude that a discerning analysis of Wilson's contentions discloses no reversible error. The Judgment and Sentence entered in the district court is affirmed.

Wilson presents these issues for our review:

*ISSUE I*

Whether appellant was denied his constitutional right to a speedy trial under the United States Constitution, Sixth Amendment, and the Wyoming State Constitution, Art. 1 § 10, when the trial court granted a continuance in appellant's trial over his objection and denied appellant's request for dismissal of all charges against him with prejudice for violating W.R.Cr.P. 48?

*ISSUE II*

Whether the trial court erred in admitting 404(b) evidence because: 1) notice was lacking; 2) the evidence was not admitted for a proper purpose; 3) the jury instruction was not sufficient?

*ISSUE III*

Whether the trial court erred by rejecting appellant's proposed jury instruction and failing to instruct the jury on the statutory definition of an essential element of the criminal offense for which appellant was charged?

The State's brief includes this statement of the issues:

I. Whether appellant's constitutional right to a speedy trial was violated?

II. Whether the trial court properly admitted evidence of appellant's uncharged misconduct?

III. Whether the trial court properly instructed the jury?

On October 2, 1998, Wilson moved into the home of the victim and her three children. Four days later, Wilson, who had been drinking, assaulted the victim in her bathroom. The couple had been to a party at a relative's home, and upon their return to the victim's house Wilson became argumentative. His anger escalated quickly, and when the victim went to the bathroom, Wilson broke into the bathroom. He struck the victim with his fists, a toilet seat that he tore off the toilet, and a towel rack he pulled off the wall. The victim reported the beating to the police. Later, Wilson apologized, but at the same time he insisted that the victim recant her statement to the police.

In an Information filed on October 9, 1998, Wilson was charged with one count of aggravated assault and battery, as well as other offenses which are not related to this appeal. At his arraignment on November 17, 1998, Wilson pled not guilty, and trial was scheduled for March 22, 1999. Prior to his arraignment, Wilson filed a motion for a speedy trial and for notice of the intent of the State to produce evidence of prior bad acts at his trial. On March 18, 1999, the State filed notice of its intent to introduce evidence of some of Wilson's prior bad acts, pursuant to W.R.E. 404(b). At a motion hearing the next day, Wilson argued that the evidence of prior bad acts should be excluded because he learned of the State's intent only four days before the scheduled trial date. The district court ruled that some of the W.R.E. 404(b) evidence would be received, but it ordered the trial continued to allow the defense time to prepare to respond to that evidence. Wilson's trial began on April 5, 1999. The jury convicted him of aggravated assault and battery, and he was given a life sentence as a habitual offender, pursuant to Wyo.Stat.Ann. § 6–10–201 (Lexis 1999). Wilson appeals the Judgment and Sentence of the district court.

In presenting his claim of error with respect to the jury instructions, Wilson invokes *Brett v. State*, 961 P.2d 385, 389 (Wyo.1998), and contends that the district court failed to correctly instruct on an essential element of

aggravated assault and battery as the crime is defined in Wyo.Stat.Ann. § 6–2–502 (Lexis 1999).[1] As couched by Wilson, the argument extends the *Brett* holding beyond the corollary rules that have been recognized in Wyoming.

The district court gave this instruction on the elements of the crime charged:

The elements of the crime of Aggravated Assault and Battery, as charged in this case, are:

1. On or about the 7th day of October, 1998

2. In the County of Natrona, and State of Wyoming

3. The Defendant, Wesley Wilson

4. Intentionally or knowingly caused

5. Bodily injury to another person [the victim]

6. With a deadly weapon.

If you find from your consideration of all the evidence that each of these elements has been proved beyond a reasonable doubt, then you should find the Defendant guilty.

If, on the other hand, you find from your consideration of all of the evidence that any of these elements has not been proved beyond a reasonable doubt, then you should find the Defendant not guilty.

Wilson does not contend that the elements instruction was incorrect in any way.

The district court then offered the following definitional instructions:

"Deadly weapon" means but is not limited to a firearm, explosive or incendiary material, motorized vehicle, an animal or other device, instrument, material or substance, which in the manner it is used or is intended to be used is reasonably capable of producing death or serious bodily injury.

"Bodily injury" means physical pain, illness or any impairment of physical condition.

Both definitions are taken from Wyo.Stat. Ann. § 6–1–104 (Michie 1997). The district court refused to give the jury the statutory definition of "serious bodily injury,"[2] pointing out that the term was not an essential element of the charged offense. The fact that the term is included in the definition of a "deadly weapon" did not require, in the mind of the district court, that the definition be given. We perceive that it would have been difficult to give both instructions without further explanation as to how the two definitions relate to the charged offense.

■ Our standard for reviewing alleged errors in instructing the jury is:

We afford significant deference to the trial court in instructing the jury:

"[T]he trial judge is afforded latitude to tailor the instructions to the facts of the case, and reversible error will not be found as long as the instructions when viewed as a whole and in the context of the entire trial fairly and adequately cover the issues."

*Scadden v. State,* 732 P.2d 1036, 1053 (Wyo.1987), *followed in Seymour v. State,* 949 P.2d 881, 883 (Wyo.1997). *Streitmatter v. State,* 981 P.2d 921, 925 (Wyo. 1999). Our charge then is to establish, given the facts of the case, the parameters of our standard in the context of our law relative to giving statutory definitions in the instructions in criminal cases.

■ First, we remind the judiciary and the bar that:

The trial court failed to provide the jury with the statutory definition of a term which described an essential element of the crime of larceny, which was fairly raised by Brett and was material to this case. *"[T]he failure to give any in-*

---

1. Wyo.Stat.Ann. § 6–2–502 provides, in pertinent part:

   (a) A person is guilty of aggravated assault and battery if he:

   * * *

   (ii) Attempts to cause, or intentionally or knowingly causes bodily injury to another with a deadly weapon[.]

2. That definition is set forth in Wyo.Stat.Ann. § 6–1–104(a)(x), and it reads:

   "Serious bodily injury" means bodily injury which creates a substantial risk of death or which causes miscarriage, severe disfigurement or protracted loss or impairment of the function of any bodily member or organ[.]

*struction on an essential element of a criminal offense is fundamental error, requiring reversal of the defendant's conviction."* Vigil v. State, 859 P.2d 659, 662 (Wyo.1993) (citations omitted).

*Brett,* 961 P.2d at 391 (emphasis added). The exceptions to the requirement of instruction on statutory definitions are limited:

A court need not give an instruction defining a term unless it has a technical legal meaning so different from its ordinary meaning that the jury, without further explanation, would misunderstand its import in relation to the factual circumstances. *Cardenas v. State,* 811 P.2d 989, 996 (Wyo. 1991). Prejudicial error must be demonstrated by appellant and prejudice will not be demonstrated unless the instruction confused or misled the jury with respect to the proper principles of law. *Collins v. State,* 854 P.2d 688, 700 (Wyo.1993); *Lowseth v. State,* 875 P.2d 725, 729 (Wyo.1994). Failure to instruct properly on an element of a crime does not constitute plain error where that element is not contested at trial or where evidence of the defendant's guilt is overwhelming. *Miller [v. State],* 904 P.2d [344] at 349 [(Wyo.1995)].

*Compton v. State,* 931 P.2d 936, 941 (Wyo. 1997).

██ In this case, the district court gave the statutory definitions for those terms that were elements of the charged offense. Wilson contends, however, that error must be found for the failure to give as an instruction the statutory definition for a term that is used in the statutory definition of one of the elements. The full phrase in the definition of a deadly weapon is "reasonably capable of producing death or serious bodily injury[.]" Wyo.Stat.Ann. § 6–1–104(a)(iv). The definition of serious bodily injury that Wilson requested would have duplicated the term "death" included in the instruction defining "deadly weapon." In the context of the charged offense, which requires only bodily injury as an element, the requested instruction had a definite potential for confusing the jury. As used in the definition of a deadly weapon, the term "serious bodily injury" does not have "a technical legal meaning so different from its ordinary meaning that the jury, without further explanation, would misunderstand its import in relation to the factual circumstances." *Compton,* 931 P.2d at 941. We conclude that the decision to give or refuse an instruction on the statutory definition of a term used in defining an element of an offense is within the latitude afforded to the district court to tailor the instructions to the circumstances of the case. No error occurred in the refusal of the district court to give this proffered instruction.

██ Wilson's argument of his first issue is premised on the fact that his trial commenced 140 days after his arraignment, which violated his right to a speedy trial. He contends that such a delay is impermissible pursuant to both the United States and Wyoming Constitutions, and W.R.Cr.P. 48(b). The purpose of W.R.Cr.P. 48(b) is to protect a criminal defendant's constitutional right to a speedy trial. *Detheridge v. State,* 963 P.2d 233, 235 (Wyo.1998). It follows that a violation of W.R.Cr.P. 48(b) is a *de facto* violation of the constitutional guarantee. If we determine that W.R .Cr.P. 48(b) has not been violated, "we apply the four-part constitutional test articulated in *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972), * * * to ensure that the defendant's constitutional guarantee to a speedy trial has been satisfied." *Detheridge,* 963 P.2d at 235.

W.R.Cr.P. 48(b) provides, in relevant part:

(1) It is the responsibility of the court, counsel and the defendant to insure that the defendant is timely tried.

(2) A criminal charge shall be brought to trial within 120 days following arraignment unless continued as provided in this rule.

* * *

(4) Continuances not to exceed six months from the date of arraignment may be granted by the trial court as follows:

(A) On motion of defendant supported by affidavit; or

(B) On motion of the attorney for the state or the court if:

(i) The defendant expressly consents;

(ii) The state's evidence is unavailable and the prosecution has exercised due diligence; or

(iii) Required in the due administration of justice and the defendant will not be substantially prejudiced; and

(C) If a continuance is proposed by the state or the court, the defendant shall be notified. If the defendant objects, the defendant must show in writing how the delay may prejudice the defense.

* * *

(6) Any criminal case not tried or continued as provided in this rule shall be dismissed 120 days after arraignment.

■ Wilson argues that W.R.Cr.P. 48(b) was violated when the district court granted the continuance that resulted in the trial starting 140 days after his arraignment. Under the plain language of the rule, however, the district court had the requisite authority to order that continuance. The State requested the continuance in response to Wilson's complaint that he had not received timely notice of the intent of the State to introduce evidence of prior bad acts, and the district court granted it after a hearing. The hearing disclosed that notification was provided promptly after the State learned that the witness who would testify to the prior bad acts was available. The district court determined that the State should not be foreclosed from using the evidence, but that a continuance should be granted to permit Wilson to evaluate the evidence and prepare to meet it.

A continuance required in the due administration of justice is provided for in W.R.Cr.P. 48(b)(4)(B)(iii). Our analysis from a similar case is applicable here:

The jury trial in this case was set within the 120–day period contained in W.R.Cr.P. 48(b). Similarly, it was continued to a date well within the 180–day deadline, after a hearing. The district judge heard appellant's objections, then continued the trial for the valid reasons set forth above. Further, appellant has not shown such prejudice as is required to establish a violation of the rule or its constitutional underpinnings.

*Sides v. State,* 963 P.2d 227, 230 (Wyo.1998). No convincing showing of prejudice to Wilson is found in this record.

■■ Even though we hold that no violation of W.R.Cr.P. 48(b) occurred, we proceed to consider the four-part *Barker* test, which this Court adopted in *Cosco v. State,* 503 P.2d 1403, 1405 (Wyo.1972), *cert. denied,* 411 U.S. 971, 93 S.Ct. 2164, 36 L.Ed.2d 693 (1973). The *Barker* test requires us to balance four factors: the length of delay, the reason for delay, the defendant's assertion of his right, and prejudice to the defendant.

The length of the delay here was twenty days beyond the 120–day standard articulated in W.R.Cr.P. 48(b). That is considerably shorter than delays we have held to violate a defendant's constitutional right to a speedy trial. *See Harvey v. State,* 774 P.2d 87, 90–91 (Wyo.1989) (delay of over seventeen months between arraignment and trial violated speedy trial right).

The reason for the delay was the location of a witness for the State shortly before the scheduled trial date. The choice confronting the district court was either continuing the trial to allow the defense time to prepare for the new evidence or excluding the new evidence. The district court made a reasoned and justifiable choice, and we hold that the delay was for good cause in the due administration of justice.

There is no question concerning Wilson's assertion of his right to a speedy trial. He filed a demand for a speedy trial prior to his arraignment. Wilson's trial counsel also objected to the continuance at the March 19, 1999 hearing, saying, "we're at the 120 days, and I object to any continuance of the trial."

The final factor for our consideration is prejudice to the defendant. Wilson's brief or argument does not explain how he was prejudiced by the delay, but it does refer to a written objection filed in response to the continuance granted by the district court. In that pleading, Wilson asserted that he was prejudiced in two ways:

First and foremost, Mr. Wilson has been in jail since his arrest on October 12, 1998. His bond is set at $25,000 which is unrea-

sonable and cannot be posted by Mr. Wilson. The fact that he now has to remain incarcerated until his trial prejudices Mr. Wilson. Second, the delay prejudices Mr. Wilson because the State has been allowed via the continuance to attempt to introduce evidence which should be excluded due to its lack of due diligence. The State chose not to file its notice of intent to use 404(b) until 3 days prior to trial even though the defense requested it November 9, 1998. The Court agreed that it was untimely and then instead of properly remedying the problem through exclusion of the evidence, the Court basically endorsed the late filing by the State by providing time in which the defendant must now file an objection and request a hearing. The prejudice to the defendant is allowing the State to engage in trial by ambush. The State, based on the Court's ruling, has no incentive to provide material to the defense in a timely manner.

While pretrial confinement is undoubtedly a hardship, it did not prejudice Wilson in terms of the outcome of his trial. The admission of the W.R.E. 404(b) evidence was proper, despite Wilson's claims to the contrary. There was no unfair prejudice in the district court's ruling that the evidence was admissible. Balancing the four factors of the *Barker* test, we hold that Wilson's constitutional right to a speedy trial was not violated by a lapse of 140 days between arraignment and trial.

■■■ The second issue asserted by Wilson is that the district court erred when it allowed a witness to testify about assaults Wilson committed on her several years before the charged offense "because: 1) notice was lacking; 2) the evidence was not admitted for a proper purpose; 3) the jury instruction was not sufficient?" Decisions regarding the admission of evidence are committed to the discretion of the trial court, and we will not disturb them absent an abuse of that discretion. *Streitmatter,* 981 P.2d at 926. When evidence is offered under the provisions of W.R.E. 404(b), we will not find an abuse of discretion so long as there is a legitimate basis for the trial court's ruling. *Daniel v. State,* 923 P.2d 728, 734 (Wyo.1996) (*quoting Dean v. State,* 865 P.2d 601, 606 (Wyo.1993)).

■■ In *Vigil v. State,* 926 P.2d 351, 354–57 (Wyo.1996), we adopted the four-part test prescribed in *Huddleston v. United States,* 485 U.S. 681, 691, 108 S.Ct. 1496, 1502, 99 L.Ed.2d 771 (1988). The *Huddleston* test allows the admission of prior bad acts evidence if:

> "1) the evidence is offered for a proper purpose; 2) the evidence is relevant; 3) the probative value of the evidence is not substantially outweighed by its potential for unfair prejudice; and 4) upon request, the trial court instructs the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted."

*Vigil,* 926 P.2d at 357 (*quoting United States v. Herndon,* 982 F.2d 1411, 1414 (10th Cir. 1992), *aff'd on appeal after remand,* 34 F.3d 1077 (10th Cir.1994)).

At the March 19, 1999 hearing, the State contended that the evidence of prior bad acts was admissible to show motive, intent, opportunity, previous plan or knowledge, identity, and absence of mistake or accident. The district court deferred ruling at that time, but later decided to admit the evidence for the purpose of showing identity and intent. The district court then instructed the jury that they could consider the evidence for motive, identity, mistake or accident, and intent, and to evaluate the victim's credibility. The State argues on appeal that it was crucial to have the W.R.E. 404(b) evidence to show intent, since Wilson's defense was that he pushed the victim while struggling to take away her car keys because she was too intoxicated to drive, in effect, that the injuries were caused by an accident. We have held that evidence of prior, similar assaults are admissible to show, among other things, intent. *Rigler v. State,* 941 P.2d 734, 738 (Wyo.1997); *Johnson v. State,* 936 P.2d 458, 465 (Wyo.1997). We also have held that prior bad acts are admissible to refute a claim of accident. *See Gezzi v. State,* 780 P.2d 972, 976 (Wyo.1989) and *Goodman v. State,* 601 P.2d 178, 184 (Wyo.1979).

The second prong of the *Huddleston* test asks whether the challenged evidence was relevant. Relevant evidence is that which

has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." W.R.E. 401. The testimony of the witness concerning prior assaults under similar circumstances made more probable the determination of an assault as distinguished from an accident in this case. The State always must prove, beyond a reasonable doubt, each element of a charged offense, and the facts surrounding each element are of consequence to the outcome of the trial. We previously have ruled that W.R.E. 404(b) evidence of prior sexual assaults was relevant to support the credibility and corroborate the testimony of the victims in the charged case. *Rivera v. State*, 840 P.2d 933, 940 (Wyo. 1992). This rationale also applies to this case.

The *Huddleston* test next requires a determination of whether the probative value of the evidence is substantially outweighed by its potential for unfair prejudice. In examining this element of the *Huddleston* test, we keep in mind that its purpose is to prevent the State from introducing evidence that is unfairly prejudicial, not all prejudicial evidence. Evidence that is not in some way prejudicial would be irrelevant, since the purpose of all the State's evidence is to persuade the trier of fact of the guilt of the defendant. In *Daniel*, 923 P.2d at 735, we affirmed the district court's analysis that the danger of unfair prejudice did not outweigh the probative value of testimony about six prior sexual assaults. The district court here, as in *Daniel*, considered the danger of unfair prejudice and articulated a legitimate premise for the ruling. We hold, therefore, that no abuse of the district court's discretion occurred when the district court determined that the probative value of the prior bad acts evidence admitted here was not outweighed by the danger of unfair prejudice.

The final element of the *Huddleston* test is whether, upon request, the district court instructs the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted. The district court instructed the jury as follows:

YOU ARE INSTRUCTED THAT the testimony of [the W.R.E. 404(b) witness] is being introduced for a limited purpose. You may consider her testimony for the purposes of evaluating the credibility of the testimony of [the victim]: To determine the identity of the perpetrator; the motive of the perpetrator; that the injuries to [the victim] were not the result of mistake or accident on the part of the Defendant, and/or to determine whether the acts were intentional. You are admonished that it cannot be considered by you for any purpose other than the limited purpose for which [it] is being admitted.

Wilson faults the instruction for including purposes other than those articulated by the district court at the hearing when it found the evidence to be admissible, identity and intent.

Wilson's trial counsel requested, wrote, and approved the instruction at the trial. Consequently, this Court is reluctant to hear Wilson complain about the jury instruction on appeal because it is very close to invited error. *Dallenbach v. State*, 562 P.2d 679, 681 (Wyo.1977). We are satisfied, however, that any deficiencies in the limiting instruction do not rise to the level of that identified in *Vigil v. State*, 859 P.2d 659 (Wyo.1993). There, we held that a jury instruction that reflected a repealed statute constituted reversible error, even though defense counsel had proffered the instruction. *Id.* at 664. The rationale that "inaccurate jury instructions on a specifically repealed statute, resulting in a possible conviction without proof beyond a reasonable doubt of all present elements of a crime, cannot be excused as invited error or harmless error" is not applicable here. *Id.*

No reversible error exists with respect to the issues and contentions brought before us by Wilson in this appeal. The Judgment and Sentence entered in the district court is affirmed.