**James EMERSON, Appellant
(Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

No. 98–305.

Supreme Court of Wyoming.

Oct. 15, 1999.

Representing Appellant: Sylvia Lee Hackl, State Public Defender; Donna D. Domonkos, Appellate Counsel; and Michael Dinnerstein, Assistant Appellate Counsel. Argument by Mr. Dinnerstein.

Representing Appellee: Gay Woodhouse, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Theodore E. Lauer, Director, Prosecution Assistance Program; and Brian Hanify, Student Intern. Argument by Mr. Hanify.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and HILL, JJ.

HILL, Justice.

Appellant James Emerson was charged with aggravated burglary following the theft of several items from property located outside of Casper. At trial, the jury found him guilty of the lesser offense of burglary. Appellant claims he was denied a fair trial because the prosecutor improperly inferred that the jury could find Appellant guilty even without finding guilt beyond a reasonable doubt. Appellant further claims error in the trial court's refusal to admit allegedly crucial evidence and in its denial of a continuance in light of the State's failure to timely produce evidence. We find no reversible error and affirm.

## ISSUES

Appellant presents the following issues:

I. Did the prosecutor deprive Appellant of his due process right to a fair trial by indicating to the jury in numerous differ-

ent ways that Appellant could be convicted even if his guilt was not established beyond a reasonable doubt?

II. Did the court deprive Appellant of his constitutional rights to confront the witnesses against him and to present a defense by barring evidence that a prosecution witness had stolen evidence exculpating Appellant and that the police were motivated to prepare a case against Appellant for reasons other than Appellant's guilt?

III. Did the court deprive Appellant of his due process right to a fair trial by refusing to remedy the prosecution's failure to produce material needed to prepare Appellant's defense?

Appellee, State of Wyoming, phrases the issues as follows:

I. Did counsel for the State improperly argue to the jury that Appellant could be convicted even if his guilt was not established beyond a reasonable doubt?

II. Did the district court abuse its discretion in excluding evidence tendered by Appellant that a State's witness was suspected of having burglarized Appellant's residence, or in excluding evidence of the disposition of prior criminal charges against Appellant?

III. Did the district court abuse its discretion in denying Appellant's requested sanctions for alleged prosecutorial failure to disclose evidence to Appellant, or in denying Appellant's motion for a new trial?

## FACTS

Although their home was in Casper, David and Debra Miles kept a variety of personal property in several buildings located on 10 acres north of town. On September 24, 1997, they discovered that the barn and quanset hut had been broken into, and a large amount of property was gone. Upon investigation, police officers learned that a three-wheeler similar to one reported stolen was in the possession of Michael Harmon. During an interview, Harmon stated that he, Chris Weir, and Appellant went to the Miles' property in Weir's mother's van to "load stuff." An Information was filed against Appellant on October 30, 1997, charging him with aggravated burglary and conspiracy to commit burglary.

At trial, the State's main witnesses, Weir and Harmon, recounted what had occurred when the three men went to the Miles' property in late September. Weir testified that he had received permission from Justin Ludke, who had told Weir that he owned the place, to take a lathe from the shop to satisfy a debt. When Weir, Appellant, and Harmon arrived, they backed the van to the door of the shop. Weir was "pretty sure" that Appellant used Harmon's bolt cutters to break the lock. After loading the lathe into the van, they "just kind of went crazy, started loading all kinds of stuff." Weir also stated that Appellant took a rifle from the property. Weir further testified that after they left the property, they placed some of the items in Harmon's storage unit and then unloaded the remainder of the items at Appellant's house. Harmon's testimony essentially corroborated that of Weir, but differed as to whether bolt cutters were used to gain entry.

Testifying on his own behalf, Appellant stated that he believed that 18–year–old Justin Ludke owned the Miles' property and had given permission for the removal of any items which Weir felt would satisfy Ludke's debt. The defense argued that Emerson, therefore, did not have the requisite intent for burglary. The defense also attacked the credibility of the State's witnesses through the presentation of evidence that Weir and the police officers were "out to get" Appellant. While this theory apparently was unpersuasive, the jury found Appellant not guilty of aggravated burglary, but guilty of the lesser charge of burglary. This timely appeal followed.

## STANDARD OF REVIEW

▪ Appellant alleges seven instances of prosecutorial misconduct; six of which occurred without objection. We, therefore, will review these six allegations for plain error. To show plain error, Appellant must demonstrate:

First, the record must be clear as to the incident which is alleged error. Second, the party claiming that the error amounted

to plain error must demonstrate that a clear and unequivocal rule of law was violated. Finally, the party must prove that a substantial right has been denied him and as a result he has been materially prejudiced.

*Dudley v. State*, 951 P.2d 1176, 1179 (Wyo. 1998). In regard to the remaining allegation that the prosecutor improperly commented on Appellant's right to remain silent, we have stated that direct prosecutorial comment upon a defendant's exercise of his right to silence will entitle the defendant to reversal. *Tortolito v. State*, 901 P.2d 387, 390 (Wyo. 1995). However, a mere reference to his silence will not require reversal absent a showing of prejudice to the defendant. *Id.*

The trial court's decision to admit or exclude evidence is discretionary. *Jahnke v. State*, 682 P.2d 991, 1005 (Wyo. 1984). Similarly, an abuse of discretion standard applies to the trial court's determination regarding the appropriate remedy for alleged discovery violations. W.R.Cr.P. 16(d)(2) provides that if "it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed, or it may enter such other order as it deems just under the circumstances." An abuse of discretion means that the court could not reasonably have concluded as it did, or that it acted in a manner which exceeds the bounds of reason under the circumstances. *Vaughn v. State*, 962 P.2d 149, 151–52 (Wyo.1998).

When reviewing a claim that an appellant has been denied his due process rights by failure to produce evidence, we consider: (a) whether there has been "suppression by the prosecution after a request by the defense, (b) the evidence's favorable character for the defense, and (c) the materiality of the evidence." *Jones v. State*, 568 P.2d 837, 847 (Wyo.1977).

## DISCUSSION

### 1. Prosecutor's Statements

Appellant claims that the prosecutor informed the jury in his opening statement that they need not find beyond a reasonable doubt Appellant's intention to burglarize, but instead inferred that a guilty verdict could be forthcoming even if Appellant thought he had permission to remove the items. Appellant points to the following portion of the prosecutor's opening statement to support this argument:

They're going to tell you that J.D. Emerson got permission from Justin Ludke to go out there and take all that property from the Miles' buildings; that, in his mind, he had permission because Justin Ludke, an 18–year–old dropout, gave him permission to do so.

And that's, ladies and gentlemen, what you have to decide for yourself. Is that something that a 30–year–old defendant should or can believe? Or is it just something of mere convenience for him to say, let's go out there and take all this property; I've been given permission from an 18–year–old and haven't even confirmed if this land belongs to him? That's the excuse you're going to hear from the defendant.

In fact, you're going to hear a lot of excuses. But we think that we're going to be able to provide you with enough information to convince you that it just certainly is not acceptable; that it's too coincidental for him to have an explanation for everything. So test for yourself.

Appellant also points to closing remarks where the prosecutor asked the jury if the State's testimony was more plausible than the Appellant's explanation, and suggested that the discrepancies in the testimony should "bother" the jury and cause them to be suspicious. Appellant argues that, taken together, these statements impermissibly suggested to the jury that the State's burden of proof was merely a preponderance of the evidence. We disagree.

This Court considers the prosecutor's argument in its entirety, not just the sentences and phrases taken out of context. *Armstrong v. State*, 826 P.2d 1106, 1115–16 (Wyo.1992). Reading the opening and closing statements as a whole, it is clear that the prosecutor's opening statement urged the jury to consider Appellant's anticipated ex-

planation of his conduct in light of the facts and circumstances demonstrated by the evidence. The closing statement contained but one reference to the prosecutor's personal rejection of the Appellant's excuses—"I don't buy it"—and otherwise was an acceptable reflection on the evidence and the reasonable inferences to be drawn therefrom. We find no indication that the statements misled the jury regarding the proper burden of proof shouldered by the State or prejudiced the Appellant in any way. Consequently, Appellant has failed to show a substantial risk of a miscarriage of justice due to the prosecutor's remarks in opening and closing statements.

Appellant also claims error in the prosecutor's questions eliciting evidence that he exercised his right to remain silent during police questioning. This alleged error occurred during the prosecutor's cross-examination of Appellant regarding the voluntary statement Appellant made to the police. The first exchange transpired as follows:

> Q. And you didn't tell [the police] that you had ever seen any of those items [allegedly stolen]?
>
> A. I had told them that, before I answered anymore questions, I would like to ask my attorney.

Defense counsel made no objection. After moving to different subjects, the prosecutor later returned to Appellant's voluntary statement and asked:

> Q. Then, when officers questioned you about this, you didn't volunteer the fact that you were involved in selling the lathe to Lynette Audiss.
>
> A. I told them I'd like to speak to my attorney first.
>
> Q. And when mentioning the .22 caliber rifle from this kid who owns a farm, you didn't mention that you were the middleman who was supposed to do the actual pawning or sale of that.
>
> A. That was on the 10th of October, way before this even happened.

At this point, defense counsel asked to approach the bench where he objected to the questioning as improper. The trial court agreed, and the trial then continued with no further reference to the matter.

▮ Appellant claims that this questioning inappropriately invited the jury to convict Appellant because he exercised his constitutional right to remain silent. Again, we disagree. Our analysis of this issue was set forth in *Tortolito*, 901 P.2d at 390:

> Since the right to remain silent is a self-executing right, an accused is presumed to be exercising the right by his silence ... when questioned by the state's agents for purposes of a criminal investigation. Accordingly, the prosecutorial use of the citizen's silence to infer the guilt of the citizen is constitutionally prohibited.
>
> Prosecutorial violations are subject to the *Clenin* [*v. State*, 573 P.2d 844 (Wyo. 1978)] rule's mandate that failure to respect the constitutional right of the citizen accused not to have his silence called to the jury's attention will entitle the accused to a reversal of conviction. *Westmark v. State*, 693 P.2d 220, 221–22 (Wyo.1984), *citing Clenin*. A reference to silence which is not a "comment" will not be reversed absent a showing of prejudice. *Parkhurst v. State*, 628 P.2d 1369, 1382 (Wyo.1981).

(Footnote omitted.) The questions asked by the prosecutor did not directly comment on Appellant's right to remain silent. *See Brewster v. State*, 712 P.2d 338, 340 (Wyo.1985) (direct comment on defendant's right to remain silent is error per se). Rather, the prosecutor merely asked if certain facts were volunteered when Appellant *agreed* to talk with police. Thus, at most, the prosecutor's questions created an indirect reference to Appellant's decision to withhold information from the officers. Even so, we find no prejudice to Appellant by this questioning. *Tortolito*, 901 P.2d at 390.

To show material prejudice, Appellant must demonstrate that "there is a reasonable possibility that the verdict might have been more favorable" had the error not occurred. Conflicting testimony and other evidence was presented at trial, much of it pointing to the lack of credibility in Appellant's version of the facts. For instance, a pipe wrench taken from the Miles' property and found at Appellant's home was identified by Mr. Miles as his own through the presence of pink paint in the grooves of the handle. Mr. Miles testi-

fied that in the past he had painted the handles of his tools pink so they could be distinguished from the tools of coworkers. Over the years, the paint had worn off except in the grooves of the tool. In response, Appellant claimed the pipe wrench belonged to his mother, and that the pink paint was caused by a recent over spray when Appellant was painting a go-cart. Appellant's version, however, did not account for the fact that the paint was found only in the grooves and did not match the pink color of the go-cart.

This is but one example of Appellant's testimony indicating fabrication. The prosecution also presented evidence which placed Appellant at the scene of the burglary and established his possession of the stolen items in his home. The record convincingly demonstrates that the prosecutor's questions regarding crucial facts omitted from Appellant's voluntary statement clearly were not a significant factor in the outcome of the trial. Therefore, Appellant has failed to show any prejudice requiring reversal of his conviction.

### 2. Exclusion of Evidence

 Appellant contends he was denied his right to present a defense because he was not allowed to enter two categories of evidence. The first category consists of police reports naming Weir as a principal suspect in the break-in of Appellant's home. Appellant claims that Weir took a receipt for a 100-foot tape measure identified as some of the stolen property, but which Appellant allegedly bought from Ludke. Thus, Appellant claims that these reports were relevant to show that Weir destroyed exculpatory evidence supporting Appellant's defense that he believed he had Ludke's permission to remove other items. The second category of evidence is Appellant's prior record, which included dismissals and acquittals of past charges. Appellant argues that this evidence was relevant to show that the police were biased against him.

However, Appellant fails to recognize that the trial court never excluded this evidence. In argument prior to voir dire during which Appellant's prior police record was discussed, the trial court ruled that such evidence is generally not admissible, but "we'll have to take that up in the course of the trial." At trial, prior to the cross-examination of Weir, the State moved to exclude the police reports of the alleged break-in at Appellant's home. After hearing arguments of counsel in chambers, the trial court stated:

So the fact that it was reported or what that hearsay says, I don't know how you're going to get that in. But I would allow inquiry relative to things that may have been directed towards the witness.

I guess you could inquire as to whether there was a break-in into the house, whether there were receipts stolen, whether there was a Caller ID erased. And if those matters are denied, we'll take them up later on as to what counter evidence there may be.

So basically, what I'm going to do is deny the State's motion for an order in limine and do so without prejudice to the State objecting as specific items are addressed. My general feeling is that some limited inquiry, at least preliminarily, could be made into those areas.

Appellant made no subsequent offer of any of this evidence. Therefore, Appellant's argument on this issue is entirely without merit.

### 3. Delay in Production of Requested Discovery

Appellant's final argument is that the trial court deprived him of a fair trial by failing to grant relief for the State's alleged failure to timely produce the shed padlock, which was cut for entry, and a prior statement by witness Ludke. Appellant claims that the State's conduct in failing to produce these items required their suppression at trial, or in the alternative, provided ample basis to grant Appellant's motion for a new trial.

Appellant filed a detailed Motion for Discovery on January 5, 1998, which requested production of all statements of the witnesses and the opportunity to inspect any tangible evidence in the possession, custody, or control of the State, specifically requesting the lock alleged to have been cut during the offense. A discovery order to this effect was issued on March 11, 1998. The prosecution failed to produce the padlock until three days

before the trial. Appellant also claimed that prior statements of Justin Ludke were not provided until the day of trial. The trial court denied Appellant's request that the State be prohibited from introducing this evidence, finding that Appellant would not be prejudiced by the timing of production.

After trial, Appellant filed a motion for a new trial based upon the prosecution's failure to produce this evidence. Appellant claimed that the knowledge of Ludke's statements would have changed the impeachment of the officers testifying against him and would have led to the subpoena of another witness. Appellant also maintained that had he been provided the lock at an earlier date, he could have produced witnesses refuting that the lock had been on the building at the time of the burglary due to the degree of rust on the lock where it had been cut. The trial court denied this motion, again finding no prejudice to the defendant.

■■■ To succeed on this claim, Appellant must first show that the evidence at issue was suppressed by the State. *Rodriguez v. State*, 962 P.2d 141, 146 (Wyo.1998); *Spencer v. State*, 925 P.2d 994, 998 (Wyo. 1996). In regard to Ludke's statements, we find this doubtful. The State provided evidence that Appellant's counsel was given these statements on December 11, 1997— over three months before trial. While Appellant denies he received six pages of the statements, a note authored by his counsel's legal assistant noted that the material received in December contained "six loose pages," which were not identified. Even were we to assume the statements were not supplied until the trial, Appellant again fails to demonstrate how he was prejudiced by their absence.

Although Appellant suggests he may have called another witness, he did not make an offer of proof at trial or in the hearing on a motion for a new trial regarding what that witness would have said. Were we to credit counsel's current statements, the anticipated testimony at most would have impeached Ludke's testimony that he had not sold tools from his pickup truck. "Evidence which only impeaches a witness, contradicts or corroborates evidence produced at trial is not suffi-

cient to grant a new trial." *Lansing v. State*, 669 P.2d 923, 927 (Wyo.1983). We further note that Appellant did not request a continuance so that this witness could be presented.

Appellant also suggests that the production of Ludke's statements would have altered the questioning of witnesses at trial. This argument is singularly unpersuasive since the trial court offered Appellant the opportunity to recall any witnesses it wished, and, in fact, one officer was recalled for questioning.

■■■ Finally, Appellant claims that the trial court erred in refusing a requested continuance to allow the defense to analyze the condition of the padlock found at the scene of the burglary. W.R.Cr.P. 16(a)(1)(C) provides in pertinent part:

(a) Disclosure of evidence by state.—

(1) Information Subject to Disclosure

(C) Documents and Tangible Objects.— Upon written demand of the defendant, the state shall permit the defendant to inspect and copy or photograph ... tangible objects ... which are within the possession, custody or control of the state, and which are material to the preparation of the defendant's defense or are intended for use by the state as evidence in chief at the trial[.]

The trial court's discovery order reiterated the general language of the rule, and further ordered "specifically including without limitation, if the State or its agents have them, the following: ... any bolt cutters or locks or keys."

The record is clear that neither the State nor its agents had the padlock in their possession until the Friday prior to trial when it was promptly produced. *See United States v. Marshall*, 132 F.3d 63, 68 (D.C.Cir.1998) (government cannot be required to disclose evidence which it neither possesses nor controls), and *United States v. Gatto*, 763 F.2d 1040, 1047–49 (9th Cir.1985) (government need only turn over those documents actually in its possession); *see also, United States v. Friedman*, 593 F.2d 109, 120 (9th Cir.1979); *State v. Babb*, 125 Idaho 934, 877 P.2d 905, 909 (1994); and *Young v. State*, 146 Ga.App.

167, 245 S.E.2d 866, 867 (1978). At trial, Deputy Anderson testified that he had gone to the Miles' property to investigate the break-in. He saw that the lock had been cut off and was laying on the floor of the structure. Deputy Anderson did not take the lock into evidence. Both Mr. and Mrs. Miles testified that the lock remained on the floor until the Friday before trial, and they provided it only when the prosecutor asked them if it was in their possession. Counsel for the State informed the court that he had been unaware of the existence of the padlock until the previous Wednesday or Thursday.

However, we note that our ruling is not an invitation for the prosecution to "engage in gamesmanship in discovery matters."

> To the contrary, a prosecutor may not sandbag a defendant by "the simple expedient of leaving relevant evidence to repose in the hands of another agency while utilizing his access to it in preparing his case for trial." *Brazel*, 102 F.3d at 1150 (quoting *United States v. Trevino*, 556 F.2d 1265, 1272 (5th Cir.1977))[1]. Under such circumstances, that evidence is "plainly within [the prosecutor's] Rule 16 'control' ". *Id.*

*Marshall*, 132 F.3d at 69 (footnote added) (second alteration in original). In this case, there is no evidence that the government purposely ambushed the defense when it produced the padlock only days before trial. Therefore, the district court did not abuse its discretion in denying the defense motion that this evidence be suppressed.

Moreover, Appellant has not shown that he was materially prejudiced because he was not able to examine the padlock earlier. Appellant does not now identify—nor did he identify at trial or in his motion for a new trial—who the witness might be who would allegedly testify that the condition of the lock is material. Thus, Appellant's argument is founded on speculation that such a witness may exist. This is insufficient to show that he was materially prejudiced by the fact that the lock was not produced until the Friday before trial.

1. *United States v. Brazel*, 102 F.3d 1120 (11th Cir.1997), *cert. denied*, 522 U.S. 822, 118 S.Ct.

## CONCLUSION

Appellant fails to raise any issue which demonstrates that he was deprived of a fair trial. We affirm.