2004 WY 142

**Donna LAPP, Appellant (Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

Nos. 03–136, 03–137.

Supreme Court of Wyoming.

Nov. 17, 2004.

Representing Appellant: Ken Koski, State Public Defender, and Donna D. Domonkos, Appellate Counsel. Argument by Ms. Domonkos.

Representing Appellee: Patrick J. Crank, Attorney General; Paul Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Theodore E. Lauer, Director PAP; Robert W. Ingram, Student Director PAP; Jacob E. Eppler, Eric Phillips, Sarah A. Rodrigues, Student Interns PAP; and Brittny Lewton, Student Intern. Argument by Ms. Lewton.

Before HILL, C.J., and GOLDEN, KITE, and VOIGT, JJ., and STEBNER, D.J., Retired.

KITE, Justice.

[¶ 1]   Donna Lapp was found guilty by a jury of one count of forgery in violation of Wyo. Stat. Ann. § 6–3–602(a)(ii) (LexisNexis 2003) and two counts of check fraud in violation of Wyo. Stat. Ann. § 6–3–702(b)(iii) (LexisNexis 2003). She appeals the convictions, claiming plain error occurred in the manner in which the district court instructed the jury concerning intent to defraud. She also claims insufficient evidence was presented to support the convictions. We affirm the forgery conviction and reverse the check fraud convictions.

**ISSUES**

[¶ 2]   Ms. Lapp presents the following issues:

I.   Whether plain error occurred when the jury was not instructed on the meaning of the critical element intent to defraud or specific intent.

II.  Whether it was plain error for the jury to be instructed on the presumption of intent to defraud when the state failed to present the prima facie evidence necessary for the presumption.

III. Whether there was sufficient evidence to support a finding of the intent to defraud element for the fraud by check convictions.

IV. Whether there was sufficient evidence to prove beyond a reasonable [doubt] that Ms. Lapp signed Mr. Evans' signature with an intent to defraud.

[¶ 3] The State rephrases the issues as follows:

I. Did the district court commit plain error when it failed to instruct the jury as to the definition of the term "intent to defraud?"

II. Did the state present sufficient evidence from which the jury could find that appellant failed to pay the two insufficient funds checks within five days of notice of their dishonor, thereby supporting the jury instruction that such failure may be evidence of an intent to defraud?

III. Did the state present sufficient evidence to support the jury's finding that appellant was guilty of fraud by check?

IV. Did the state present sufficient evidence to support the jury's finding that appellant authenticated the unauthorized signature of Gary Evans with intent to defraud?

## FACTS

[¶ 4] In February of 2002, Ms. Lapp asked a co-worker to notarize an automobile title bearing the name Gary Evans on the front and what Ms. Lapp represented to be Mr. Evans' signature on the back. A few months later, Mr. Evans attempted to obtain a bank loan and was asked to provide the automobile title as collateral. He searched his home and could not find the title. Although Ms. Lapp helped Mr. Evans look for the title and spoke to the bank loan officer, she did not reveal that she previously removed the title from his home, represented the signature on the back as being his and had it notarized. Mr. Evans testified the signature on the title was not his and he did not give Ms. Lapp permission to sign his name on the title. No evidence was presented concerning what happened to the title after it was notarized.

[¶ 5] In March of 2002, Ms. Lapp wrote a check for $1,800 to her former husband, Curtis Lapp. After he deposited the check in his bank account, Mr. Lapp received notice that there were insufficient funds to cover the amount. In June of the same year, Ms. Lapp again wrote a check to Mr. Lapp, this time in the amount of $4,800. As with the prior check, Mr. Lapp was notified after he deposited the check and withdrew a slightly smaller amount from his account that there were insufficient funds to cover Ms. Lapp's check. A bank representative contacted Mr. Lapp and informed him he was responsible for bringing his account current. Mr. Lapp obtained another check from Ms. Lapp. This time, however, Mr. Lapp's bank contacted the bank the check was written on to verify that funds were available to cover the check. The bank was informed the funds were not available. Ultimately, Ms. Lapp repaid Mr. Lapp all of the money she owed him as a result of the insufficient funds checks.

[¶ 6] The State filed charges against Ms. Lapp, alleging she committed one count of forgery in violation of § 6–3–602(a)(ii) and two counts of issuing checks in amounts exceeding $500 without sufficient funds in violation of § 6–3–702(b)(iii). The charges were joined for purposes of trial, which was held April 3 and 4, 2003. The jury found Ms. Lapp guilty of all three counts and she was sentenced to three concurrent terms of five to ten (5–10) years in the Wyoming Women's Center.

## STANDARD OF REVIEW

[¶ 7] Because Ms. Lapp did not offer an instruction on intent to defraud or object to the instructions given, we review her first two claims for plain error. Under the plain error standard, she must show a clear and unequivocal rule of law was violated, the violation clearly appeared in the record, and the violation resulted in denial of a substantial right to her material prejudice. *Simmons v. State*, 2003 WY 84, ¶ 25, 72 P.3d 803, ¶ 25 (Wyo.2003). Our standard for reviewing alleged error in jury instructions is:

We afford significant deference to the trial court in instructing the jury:

"The trial judge is afforded latitude to tailor the instructions to the facts of the

case, and reversible error will not be found as long as the instructions when viewed as a whole and in the context of the entire trial fairly and adequately cover the issues."

*Wilson v. State*, 14 P.3d 912, 915 (Wyo.2000) (citations omitted).

[¶ 8]   In reviewing Ms. Lapp's sufficiency of the evidence claims, we must determine whether a rational jury could find the State proved the essential elements of the crime beyond a reasonable doubt.  *Vlahos v. State*, 2003 WY 103, ¶ 36, 75 P.3d 628, ¶ 36 (Wyo.2003).   We do not consider conflicting evidence presented by Ms. Lapp. *Id.* We afford to the State every favorable inference that may be reasonably and fairly drawn from the evidence it presented.  *Id.* It was the jury's responsibility to resolve conflicts in the evidence and we will not substitute our judgment for that of the jury.  *Id.* Our only duty is to determine whether a quorum of reasonable and rational individuals could have come to the same result.  *Id.*

## DISCUSSION

### 1.   Plain Error in Failing to Instruct on Intent to Defraud

[¶ 9]   Ms. Lapp asserts that to support the convictions the State had to prove beyond a reasonable doubt that she committed the charged offenses with the specific intent to defraud.   She contends plain error occurred because the jury was not instructed on this crucial element.   The State responds that the district court properly instructed the jury that intent to defraud was an element of both crimes charged.   The State contends the phrase "intent to defraud" does not have a technical legal meaning so different from its ordinary meaning as to require a separate jury instruction defining the phrase.   We agree with the State.

[¶ 10]   Jury instructions should inform the jurors concerning the applicable law so that they can apply that law to their findings with respect to the material facts. *Wheaton v. State*, 2003 WY 56, ¶ 20, 68 P.3d 1167, ¶ 20 (Wyo.2003).   A failure to give an instruction on an essential element of a criminal offense is fundamental error, as is a confusing or misleading instruction.  *Id.* The test of whether a jury has been properly instructed on the necessary elements of a crime is whether the instructions leave no doubt as to the circumstances under which the crime can be found to have been committed.  *Id.*

A court need not give an instruction defining a term unless it has a technical legal meaning so different from its ordinary meaning that the jury, without further explanation, would misunderstand its import in relation to the factual circumstances.   Prejudicial error must be demonstrated by appellant and prejudice will not be presumed unless the instruction confused or misled the jury with respect to the proper principles of law.   Failure to instruct properly on an element of a crime does not constitute plain error where that element is not contested at trial or where evidence of the defendant's guilt is overwhelming.

*Wilson*, 14 P.3d at 916.

[¶ 11]   In *Wilson*, the defendant claimed error in the trial court's refusal to give an instruction defining "serious bodily injury" as used in the aggravated assault and battery statute.   We found no error, concluding the decision to give or refuse an instruction on the definition of a term used in describing an element of an offense was within the latitude afforded to the district court to tailor the instructions to the circumstances of the case. *Id.*

[¶ 12]   We similarly held in *Cardenas v. State*, 811 P.2d 989, 996 (Wyo.1991) that the term "threat" did not have a technical meaning so different from its ordinary meaning as to require an instruction defining it, and the instructions provided by the court adequately informed the jury of the elements of aggravated assault and battery.   We reached the same conclusion in *Rowe v. State*, 974 P.2d 937, 940 (Wyo.1999) with respect to the word "intentionally" as used in the felony child abuse statute.   We said, "Any attempt to instruct with respect to such a self-explanatory term would have a reasonable tendency to confuse the jury." *Id.*

[¶ 13]   In the present case, the jury was instructed as follows concerning the elements of the charges filed against Ms. Lapp:

## INSTRUCTION NO. 5

The elements of the crime of Forgery, as charged in this case, are:
  1.  On or about the 7th day of February, 2002
  2.  In Hot Springs County, Wyoming
  3.  The Defendant, Donna Lapp
  4.  With intent to defraud
  5.  Authenticated, any writing so that it purported to be the act of another who did not authorize that act.

If you find from your consideration of all the evidence that each of these elements has been proved beyond a reasonable doubt, then you should find the defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that any of these elements has not been proved beyond a reasonable doubt, then you should find the defendant not guilty.

## INSTRUCTION NO. 6

The elements of the crime of Fraud by Check, as charged in this case, are:
  1.  On or about the 5th day of March, 2002,
  2.  In Hot Springs County, Wyoming,
  3.  The Defendant, Donna Lapp,
  4.  Knowingly issued,
  5.  A check in the amount of $500.00 or more ($1800.00),
  6.  Which check was not paid because the drawer of the check had insufficient funds or credit with the drawee.

If you find from your consideration of all the evidence that each of these elements has been proved beyond a reasonable doubt, then you should find the defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that any of these elements has not been proved beyond a reasonable doubt, then you should find the defendant not guilty.

Instruction No. 7 relating to the check Ms. Lapp wrote for $4,800 set forth the same elements as those contained in Instruction No. 6. Instruction No. 8 defined "knowingly issues" as "issuing a check to obtain property or to pay a debt with intent to defraud or deceive any other person."   The court also gave the following instruction:

## INSTRUCTION NO. 9

Any of the following [may be] evidence that the person at the time he issued the check or other order for the payment of money intended that it should not be paid:
  (i) . . .
  (ii) Proof that at the time of issuance he did not have sufficient funds with the drawee and that he failed to pay the check or other order within five (5) days after receiving notice of nonpayment or dishonor, personally given or sent to the address shown on the check or other order;  or
  (iii) Proof that when presentment was made in a reasonable time the issuer did not have sufficient funds with the drawee and he failed to pay the check or other order within five (5) days after receiving notice of nonpayment or dishonor, personally given or sent to the address shown on the check or other order.

[¶ 14]   These instructions, when viewed as a whole and in the context of the entire trial, fairly and adequately instructed the jury. Instructions No. 5, 6 and 7 informed the jurors of the elements of each of the offenses charged so they could apply the law to the evidence presented.   The instructions left no doubt as to the evidence necessary for the jury to find Ms. Lapp committed the crimes of forgery and check fraud.   Instruction No. 5 informed the jurors that in order to find Ms. Lapp guilty of forgery, they had to find beyond a reasonable doubt that without Mr. Evans' authority Ms. Lapp presented the signature on the automobile title as being his with the intent to defraud.   Instructions No. 6 and 7 further informed the jurors that in order to find Ms. Lapp guilty of check fraud, they had to find beyond a reasonable doubt that she knowingly issued the checks in the respective amounts with insufficient funds in her bank account to cover them.   Concerning

specifically the check fraud charges, Instructions No. 8 and 9 defined the term "knowingly issues" and informed the jury concerning the types of proof available to show that checks were issued with the intent that they not be paid.

[¶ 15] Ms. Lapp cites *Henderson v. State*, 976 P.2d 203 (Wyo.1999) and Justice Rose's dissent in *Broom v. State*, 695 P.2d 640 (Wyo. 1985) in support of her argument that the jury should have been instructed on the meaning of "intent to defraud." Although jury instructions defining the term were given in those cases, this Court did not hold in either case that such an instruction was required.

[¶ 16] In the context of the instructions as a whole, we conclude the term "intent to defraud" does not have a technical meaning so different from its ordinary meaning as to require an instruction defining it. Particularly in the context of the evidence presented here, the words "intent" and "defraud" are self-explanatory. Even if they were not, the instructions given, considered together, adequately informed the jurors what they needed to find to support a guilty verdict. We conclude no violation of a clear and unequivocal rule of law was committed, and there was no plain error.

### 2. Sufficiency of the Evidence

#### a. Check Fraud

[¶ 17] Ms. Lapp next claims there was insufficient evidence to support the two convictions for check fraud because no evidence was presented that she wrote the checks with the intent to defraud. Specifically, she asserts the State presented no evidence as to the status of her checking account at the time the checks were issued or that she failed to pay the checks within five days after receiving notice of nonpayment.

[¶ 18] Addressing the first check fraud conviction, the State responds that the evidence showed Ms. Lapp wrote Mr. Lapp a check for $1,800, he deposited it in his bank account, Ms. Lapp's bank returned the check to Mr. Lapp's bank because there were not sufficient funds in Ms. Lapp's account to cover it and $1,800 was charged against Mr.

Lapp's account. With respect to the second conviction, the State asserts the evidence showed Ms. Lapp gave Mr. Lapp a check for $4,800, which he deposited, the check was returned for insufficient funds and $4,800 was charged against Mr. Lapp's account. The State also asserts the evidence showed that neither check was paid within five days after Ms. Lapp received notice and demand for payment. The State contends this evidence was sufficient to support the two convictions. We hold that the State presented insufficient evidence to meet its burden of showing Ms. Lapp failed to pay the checks within five days after receiving notice and demand for payment.

[¶ 19] The State's evidence showed the checks were dated March 5, 2002, and June 24, 2002. The State's evidence further showed that the sheriff's office served Ms. Lapp with notices of demand for payment of the checks on July 25, 2002. Although the sheriff testified that to his knowledge payment was never made on the checks, Mr. Lapp testified that Ms. Lapp paid him all the money she owed him. Mr. Lapp testified that she did not pay him all at one time and made the first payment on the $1,800 check sometime in 2002. However, he could not remember when in 2002 she made the first payment nor could he remember when she paid the remainder of the $1,800. The State did not question Mr. Lapp concerning when Ms. Lapp paid him the $4,800. Because the State could not or did not establish when Ms. Lapp paid the amount of the checks, it failed to carry its burden of proving that she failed to pay within five days after service of notice and demand for payment. Affording to the State every favorable inference that may be reasonably and fairly drawn from this evidence, we conclude the evidence was insufficient to meet the State's burden of proof. A reasonable inference simply cannot be made from Mr. Lapp's vague testimony that Ms. Lapp failed to pay the check amounts within five days after receiving the July 25, 2002, notice and demand for payment.

#### b. Forgery

[¶ 20] In her final argument, Ms. Lapp asserts insufficient evidence was pre-

sented to support the forgery conviction. Specifically, she claims the State did not prove beyond a reasonable doubt that she signed Mr. Evans' signature on the title with the intent to defraud or that she did so knowing she did not have the authority to sign it. She points to evidence that she signed Mr. Evans' signature to many documents, which evidence she asserts created "a reasonable inference" that she believed she had authority to sign this document. Claiming she had an ownership interest in the titled vehicle, Ms. Lapp also cites *Rickman v. State*, 135 Ark. 298, 205 S.W. 711, 712 (1918) in which a forgery conviction was overturned because the defendant had an ownership interest in the property at issue. Ms. Lapp asserts she had an ownership interest in the titled vehicle because she paid $200 toward its purchase.

[¶ 21] The State responds that sufficient evidence was presented from which a jury could conclude beyond a reasonable doubt that Ms. Lapp forged Mr. Evans' signature on the title without authority to do so and with intent to defraud. On this issue, we agree with the State. Ms. Howe testified that Ms. Lapp brought the title to her and asked her to notarize it for Mr. Evans. Mr. Evans testified he did not authorize Ms. Lapp to sign his name and that he went looking for the title and was unable to find it when the bank requested it before processing his loan request. He testified that although Ms. Lapp helped him search for the title, she did not tell him she had previously taken it and had it notarized. The bank loan officer testified that she also spoke to Ms. Lapp and Ms. Lapp told her they could not find the title and might have to apply for a new one. Ms. Lapp did not mention to her that she previously had the title notarized.

[¶ 22] Looking only at the State's evidence and giving to it all favorable inferences, we conclude a rational jury could find the State proved the essential elements of forgery beyond a reasonable doubt. *Id.* We will not substitute our judgment for that of the jury with respect to the resolution of conflicting evidence. *Id.* A quorum of reasonable and rational individuals could have concluded beyond a reasonable doubt that Ms. Lapp was guilty of forgery. *Id.* In reaching this result, we find the following excerpt from *Henderson*, 976 P.2d at 208, significant:

> It is true that there is no evidence of express statements or admissions by [the defendant] that he intended to defraud [the bank]. The jury can find the requisite intent through reasonable inferences from circumstantial evidence. The rule, as we have expressed it, is that the state of mind of a defendant can be inferred from his acts, his conduct, his words, and other circumstances in the case. If the requisite intent to defraud could not be inferred from circumstantial evidence, it often would be impossible to establish that intent, because those intent on defrauding others are not likely to tell the victims what their intentions are at the time of the criminal act.

[¶ 23] We affirm the forgery conviction and reverse the check fraud convictions based upon insufficient evidence.