2005 WY 98

**Thomas H. LUEDTKE, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 04–144.

Supreme Court of Wyoming.

Aug. 22, 2005.

Representing Appellant: Ken Koski, State Public Defender; Donna D. Domonkos, Appellate Counsel.

Representing Appellee: Patrick J. Crank, Attorney General; Paul Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; James Michael Causey, Assistant Attorney General.

Before HILL, C.J., and GOLDEN, KITE, VOIGT, and BURKE, JJ.

BURKE, Justice.

[¶ 1] Thomas H. Luedtke appeals his felony convictions for forgery and attempting to obtain possession of a controlled substance by prescription fraud. Mr. Luedtke contends that the district court improperly permitted a witness, not on the State's original witness list, to testify and erred when it supplied the jury with a supplemental instruction during deliberations. Mr. Luedtke also challenges the district court's denial of his motion for new trial. We affirm.

## ISSUES

[¶ 2] Mr. Luedtke states the issues as follows:

1. Whether the trial court erred in permitting the testimony of Dr. Patrick Murray, pharmacist, depriving appellant his constitutional right to due process and a fair trial.

2. Whether the trial court abused its discretion when it supplied the jury with a supplemental jury instruction while they were deliberating.

3. Whether the trial court erred in denying appellant's motion for new trial.

4. Whether the trial court erred in denying appellant's motion for new trial based on cumulative error.

The State substantially agrees with Mr. Luedtke's statement of the issues.

## FACTS

[¶ 3] On July 12, 2003, Mr. Luedtke developed a migraine headache while at work. He took two doses of Imitrex, but the medication provided no relief. Mr. Luedtke's foreman transported him to the hospital. At the hospital, Mr. Luedtke received a shot of Demerol for pain and Vistaril to prevent nausea. He then rested and was observed for approximately 40 minutes before being released from the hospital. He was given a prescription for 8 pills of Demerol or its generic equivalent, Meperidine.

[¶ 4] After leaving the hospital, Mr. Luedtke went to a pharmacy. On the way to the pharmacy, he changed the prescription increasing the number of pills from 8 to 18. Mr. Luedtke presented the modified prescription at the pharmacy. He left the pharmacy before the prescription was filled, but told a pharmacy employee that he would return for the prescription.

[¶ 5] The prescription tendered by Mr. Luedtke raised concerns at the pharmacy. Dr. Murray, the pharmacist on duty, telephoned the hospital regarding the prescription. Laury Johnson, the physician's assistant who wrote the prescription, confirmed that the prescription was for 8 pills. The police were contacted.

[¶ 6] Officer Scott Jones of the Casper Police Department investigated. He located Mr. Luedtke and asked Mr. Luedtke to accompany him to the Casper Police Department to discuss the event in more detail. Mr. Luedtke agreed. At the police station, after being advised of his rights and signing a waiver, Mr. Luedtke admitted altering the prescription. He was charged with forgery and prescription fraud.

[¶ 7] On January 22, 2004, the State filed its original list of anticipated witnesses. The State did not designate Dr. Murray as a potential witness. On January 26, 2004, the morning of trial, the State submitted an amended witness list that included Dr. Murray. According to the State, it did not learn of Dr. Murray until Friday, January 23, 2004, while interviewing one of the other witnesses, Jim Brown, a pharmacy technician. The State called Dr. Murray as its first witness.

Mr. Luedtke objected, claiming inadequate notice and surprise. The district court overruled the objection and allowed Dr. Murray to testify.

[¶ 8] During deliberations, the jury submitted a question to the district court regarding the meaning of the word "defraud." After consulting with counsel, the district court provided the jury with a supplemental instruction over Mr. Luedtke's objection. The district court advised the jury that " '[w]ith intent to defraud' means to act willfully and deliberately and with the specific intent to deceive or cheat."

[¶ 9] The jury returned a verdict of guilty on both counts. Mr. Luedtke filed a motion for new trial alleging unfair surprise regarding Dr. Murray's testimony and prejudice from the supplemental instruction. The district court denied the motion for new trial and entered its judgment and sentence. This appeal followed.

## DISCUSSION

### A. Admissibility of Dr. Murray's Testimony

[¶ 10] Rulings on the admissibility of evidence are within the sound discretion of the trial court. *Urbigkit v. State,* 2003 WY 57, ¶ 39, 67 P.3d 1207, ¶ 39 (Wyo.2003). We will not disturb such rulings absent a clear abuse of discretion. *Id.* An abuse of discretion occurs when it is shown that the trial court reasonably could not have concluded as it did. *Hannon v. State,* 2004 WY 8, ¶ 13, 84 P.3d 320, ¶ 13 (Wyo.2004). We will find an abuse of discretion only when the trial court "acts in a manner which exceeds the bounds of reason under the circumstances." *Hilterbrand v. State,* 930 P.2d 1248, 1250 (Wyo. 1997).

[¶ 11] Mr. Luedtke claims the district court abused its discretion when it allowed Dr. Murray to testify. Mr. Luedtke argues that he was "ambushed" by the State because the State failed to disclose Dr. Murray's identity prior to the morning of trial. He contends that he was prejudiced because he did not have an opportunity to adequately prepare for Dr. Murray's testimony. Mr. Luedtke also asserts that Dr. Murray's "sur-

prise" testimony prejudicially impacted his trial strategy.

[¶ 12] Mr. Luedtke does not claim that the State failed to comply with any order of the court for designating witnesses. No such order was entered. Additionally, Mr. Luedtke does not direct us to any legal authority which required the State to file a list of witnesses absent a court order requiring witness designation. We also note the original witness list was filed on January 22, 2004—four days before the scheduled start of the trial. Mr. Luedtke does not claim any prejudice resulting from the timing of the filing of the initial witness list.

[¶ 13] The State concedes that Dr. Murray was not identified on its initial list. According to the State, Dr. Murray's name was omitted from the initial list because it did not know of the existence of Dr. Murray. In its original list, the State identified Jim Brown as the pharmacist. In the course of trial preparation on Friday, January 23, 2004, the State learned that Mr. Brown was a pharmacy technician. Mr. Brown advised the State that Dr. Murray was the pharmacist on duty at the time Mr. Luedtke presented the prescription. The following business day, Monday, January 26, 2004, the State served Mr. Luedtke with its amended witness list in which it identified Dr. Murray as the pharmacist and changed Mr. Brown's designation to pharmacy technician.

[¶ 14] Mr. Luedtke received the amended witness list prior to the commencement of trial. He did not request a continuance. The State mentioned Dr. Murray as a potential witness in voir dire and during its opening statement. Mr. Luedtke did not raise any objection. On at least two occasions prior to the State calling its first witness, the court asked counsel if there were any additional issues that the court needed to address. Mr. Luedtke made no mention of any issues relating to Dr. Murray.

[¶ 15] Mr. Luedtke waited until Dr. Murray was called as the State's first witness to bring the matter to the court's attention. When Dr. Murray was called as a witness, the following exchange occurred:

[PROSECUTOR]: Thank you, Your Honor. The State of Wyoming would first call Mr. [sic] Patrick Murray.

* * *

[DEFENSE COUNSEL]: Your Honor, before this witness testifies—

THE COURT: One moment, Counsel.

(The following proceedings were held at the bench between the Court and counsel, out of the hearing of the jury:)

[DEFENSE COUNSEL]: Your Honor, as the Court notes, I was advised of this witness this morning just prior to jury selection. So I would object to this witness as I haven't had any time to prepare. I haven't had any statements from this witness, and I don't know what this witness would testify about. So I object.

THE COURT: All right. Are there any statements that witnesses have given to the State?

[PROSECUTOR]: No.

THE COURT: All right. I'll overrule the objection.

[PROSECUTOR]: Other than I've interviewed him in preparation for his testimony. But as far as testimony being given to law enforcement, no.

THE COURT: All right. Okay. There's [sic] no statements given to the law enforcement?

[PROSECUTOR]: No, there are none from any of the witnesses except for Officer Jones.

THE COURT: All right. I will overrule the objection.

[¶ 16] Mr. Luedtke does not claim that the State was aware that Dr. Murray was a potential witness prior to January 23, 2004. The thrust of Mr. Luedtke's claim of "ambush" is that the State should have disclosed its intent to call Dr. Murray on Friday or Saturday rather than Monday. Mr. Luedtke attempts to bolster his claim of prejudice by asserting that Dr. Murray's testimony was critical to the State's case.

[¶ 17] The legal proceeding against Mr. Luedtke was initiated on July 30, 2003. In his Affidavit Supporting Complaint filed on

that date, Officer Jones identified the prescription at issue, the pharmacy (Bi–Rite Drug) and the physician's assistant who issued the prescription. The affidavit mistakenly identified Mr. Brown as the "Bi–Rite Pharmacist."

[¶ 18] In its original witness list, the State identified Mr. Brown as a potential witness. The designation stated:

> 3. Jim Brown, Pharmacist, formally employed by Bi–Rite Drug. Such witness may offer testimony as an expert witness, and would testify that the prescribed medication, Meperidine, is a Schedule II controlled substance.

[¶ 19] On January 23, 2004, while interviewing Mr. Brown, the State learned that he was not the pharmacist on duty at the time of the incident. Mr. Brown advised the State that he was a pharmacy technician and identified Dr. Murray as the pharmacist. On the next business day, the State served defense counsel with its amended witness list.

[¶ 20] We have previously recognized the general rule that the State cannot intentionally withhold the identity of a witness from the defense. *Jackson v. State*, 522 P.2d 1286, 1288 (Wyo.1974). We have also indicated that it is improper for the prosecution to "engage in gamesmanship in discovery matters." *Emerson v. State*, 988 P.2d 518, 525 (Wyo.1999).

[¶ 21] In *Emerson*, appellant filed a motion for discovery which requested the opportunity to inspect a padlock alleged to have been cut in the course of a burglary. A discovery order was entered allowing inspection. The prosecution did not produce the padlock until three days prior to trial. Appellant immediately moved for a continuance based upon the State's delay in producing the evidence for inspection. The district court denied the motion. We affirmed the decision denying the continuance stating:

> In this case, there is no evidence that the government purposely ambushed the defense when it produced the padlock only days before trial. Therefore, the district court did not abuse its discretion in denying the defense motion that this evidence be suppressed.

Moreover, Appellant has not shown that he was materially prejudiced because he was not able to examine the padlock earlier. Appellant does not now identify—nor did he identify at trial or in his motion for a new trial—who the witness might be who would allegedly testify that the condition of the lock is material. Thus, Appellant's argument is founded on speculation that such a witness may exist. This is insufficient to show that he was materially prejudiced by the fact that the lock was not produced until the Friday before trial.

*Emerson*, 988 P.2d at 525.

[¶ 22] In this case, as in *Emerson*, there is no evidence that the State "purposely ambushed" Mr. Luedtke. In *Emerson*, months passed between the discovery request, the order of production and the production of the padlock by the State. In this case, the delay is one weekend.

[¶ 23] The lack of prejudice to Mr. Luedtke becomes apparent when the testimony of Dr. Murray is placed in proper context. Mr. Luedtke contends that Dr. Murray's statements amounted to key testimony because Dr. Murray was the only eyewitness who could place Mr. Luedtke at the pharmacy, describe his demeanor, and testify about whether Mr. Luedtke decided to cancel the filling of the prescription. Our review of the record does not support Mr. Luedtke's contentions.

[¶ 24] Dr. Murray testified that he saw Mr. Luedtke drop off the prescription at the pharmacy:

> DR. MURRAY: He dropped a prescription off, I do believe, to Jim Brown. Jim Brown picked it up. I saw him drop it off to Jim and bring it back to me to fill it.

However, Dr. Murray was not the only witness who placed Mr. Luedtke at the pharmacy. During his trial testimony, Mr. Luedtke admitted that he presented the prescription to the pharmacy:

> [DEFENSE COUNSEL]: So you handed the prescription to Bi–Rite?
> MR. LUEDTKE: Uh-huh.

Officer Jones also placed Mr. Luedtke at the pharmacy by testifying regarding admissions made by Mr. Luedtke:

OFFICER JONES: Once he got to Bi-Rite he told me he had gone to the counter, given the person at the counter the prescription and wanting [sic] the prescription to be filled.

[¶ 25] Mr. Luedtke also claims that Dr. Murray was the only witness to testify regarding his demeanor. Dr. Murray testified that Mr. Luedtke was "moving around fine" and that he didn't observe any type of impairment in his speech or movement. In addition to Dr. Murray's testimony, two other witnesses testified as to their observations of Mr. Luedtke. Ms. Johnson testified that Mr. Luedtke was not deficient in his mental status before he left the hospital. She testified that Mr. Luedtke was not impaired, walked with a normal gait, and his speech was not slurred. Ms. Johnson testified that she would not have let Mr. Luedtke leave the hospital if he was "loopy" at all. Officer Jones also provided testimony that Mr. Luedtke exhibited no signs of impairment while he was observing Mr. Luedtke.

[¶ 26] Lastly, Mr. Luedtke claims that Dr. Murray was the only witness to testify regarding Mr. Luedtke's intention to cancel the prescription. Once again, however, Mr. Luedtke fails to recognize the existence and significance of his own testimony. Mr. Luedtke admitted that he told the pharmacist that he would return for the prescription:

MR. LUEDTKE: [T]he pharmacist came out and hollered at me and said, hey, are you going to come back and get this. And I said yes, I am, or probably something to that effect. . . . I remember them hollering at me. I just didn't want to—at that point I pretty much decided I wasn't going to come back and get it because I would probably get in trouble if I did. And I just didn't want him to be mad at me, I guess. I don't know what I was thinking but I said, yeah, I'll be back.

[¶ 27] Based upon the foregoing, we find no abuse of discretion by the district court in allowing Dr. Murray to testify. Additionally, we note that Mr. Luedtke's failure to request a continuance provides further justification to reject Mr. Luedtke's assertion of error relating to the testimony of Dr. Murray. *Meek v. State*, 2002 WY 1, ¶ 19, 37 P.3d 1279, ¶ 19 (Wyo.2002).

### B. Supplemental Jury Instruction

■ [¶ 28] Mr. Luedtke challenges the district court's decision to provide the jury with a supplemental jury instruction. We afford the trial court significant deference when reviewing claims of error involving jury instructions. *Lapp v. State*, 2004 WY 142, ¶ 7, 100 P.3d 862, ¶ 7 (Wyo.2004). We have previously noted:

> A trial court is given wide latitude in instructing the jury and, as long as the instructions correctly state the law and the entire charge covers the relevant issue, reversible error will not be found. Instructions must be considered as a whole, and individual instructions, or parts of them, should not be singled out and considered in isolation. *Black v. State*, 2002 WY 72, ¶ 5, 46 P.3d 298, ¶ 5 (Wyo.2002) (citing *Ogden v. State*, 2001 WY 109, ¶ 8, 34 P.3d 271, ¶ 8 (Wyo.2001); *Coburn v. State*, 2001 WY 30, ¶ 9, 20 P.3d 518, ¶ 9 (Wyo.2001); *Merchant v. State*, 4 P.3d 184, 190 (Wyo. 2000)). Prejudice will be determined to exist only where an appellant demonstrates that the instruction given confused or misled the jury with respect to the proper principles of law. *Black v. State*, at ¶ 16 (citing *Lane v. State*, 12 P.3d 1057, 1061 (Wyo.2000); *Wilson v. State*, 14 P.3d 912, 916 (Wyo.2000)).

*Giles v. State*, 2004 WY 101, ¶ 14, 96 P.3d 1027, ¶ 14 (Wyo.2004).

[¶ 29] During its deliberations, the jury sent a note to the district court which stated, "[w]ith regard to instruction no. 11, what is a legal description of defraud with regard to item no. 4 as it applies to this case?"[1] After

---

1. Jury instruction 11 stated:
 The elements of the crime of Forgery, as charged in Count I of this case, may be proved in one or both of two ways:
 Under Theory One, such elements are:
 1. On or about the 12th day of July, 2003;

2. In Natrona County, Wyoming;
3. The Defendant, Thomas H. Luedtke;
4. With intent to defraud;
5. Altered the writing of another, to-wit: a prescription issued by Laury Johnson, P.A.;
6. Without authority.

conferring with counsel and noting defense counsel's objections, the district court provided a response to the jury in the form of supplemental instruction 21 which stated, " '[w]ith intent to defraud' means to act willfully and deliberately and with the specific intent to deceive or cheat." The instruction was read to the jury in open court and the jury was provided a written copy of the instruction. The district court advised the jury:

> In response to your question, the Court has prepared a supplemental jury instruction. I'd ask the bailiff to distribute that. The supplemental jury instruction provides as follows: With intent to defraud means to act willfully and deliberately and [sic] the specific intent to deceive or cheat.

> That is what I can give you in response to your question. And I would ask you to review that as well as all other jury instructions and recall that you not put undue emphasis on any one particular instruction, that you need to review them … and consider all those instructions together as a whole.

[¶ 30] Mr. Luedtke alleges that the supplemental instruction confused the jury. He relies upon our holding in *Lapp* to support his contention. His reliance is misplaced.

[¶ 31] In *Lapp*, the defendant asserted that the district court committed plain error when it failed to provide a definition instruction of "intent to defraud." We affirmed the conviction and held that the district court did not abuse its discretion by failing to provide the challenged jury instruction. We stated:

> In the context of the instructions as a whole, we conclude the term "intent to defraud" does not have a technical meaning so different from its ordinary meaning as to require an instruction defining it. Particularly in the context of the evidence

presented here, the words "intent" and "defraud" are self-explanatory. Even if they were not, the instructions given, considered together, adequately informed the jurors what they needed to find to support a guilty verdict. We conclude no violation of a clear and unequivocal rule of law was committed, and there was no plain error.

*Lapp*, ¶ 16.

[¶ 32] Mr. Luedtke urges us to extend this holding in *Lapp* to a finding of error in this case. We decline to do so. In *Lapp*, we also recognized that it is not error to provide a definition instruction in an appropriate case. *Lapp*, ¶ 15 (citing *Henderson v. State*, 976 P.2d 203, 208–209 (Wyo.1999); *Broom v. State*, 695 P.2d 640, 644–645 (Wyo.1985) (Rose, J., dissenting)). The language of the supplemental instruction challenged by Mr. Luedtke is identical to instructions provided in *Cronin v. State*, 678 P.2d 370, 371 (Wyo. 1984) and *Broom*. We found no error relating to the instruction in those cases.

[¶ 33] In *Lapp*, we reiterated that "the decision to give or refuse an instruction on the definition of a term used in describing an element of an offense was within the latitude afforded to the district court to tailor the instructions to the circumstances of the case." *Lapp*, ¶ 11. In this case, the discussion regarding the need for a supplemental jury instruction was prompted by a question from the jury. The district court met with counsel to discuss the appropriate response. The district court considered several responses including defense counsel's suggestion that no additional instruction be provided. Ultimately, the district court chose an instruction identical to one given in *Cronin*. While the district court was not required to provide the supplemental instruction, it was not prohibited from doing so. We find no abuse of discretion in the district court's

---

OR

Under Theory Two, such elements are:
1. On or about the 12th day of July, 2003;
2. In Natrona County, Wyoming;
3. The Defendant, Thomas H. Luedtke;
4. With intent to defraud;
5. Uttered any writing;
6. Which the defendant knew to have been altered without authority.

If you find from your consideration of all the evidence that each of the elements of either theory has proved beyond a reasonable doubt, then you should find the defendant guilty under such theory.

If, on the other hand, you find from your consideration of all the evidence that any of these elements has not been proved beyond a reasonable doubt, then you should find the defendant not guilty.

decision to respond to the jury's inquiry by giving the supplemental instruction.

[¶ 34] Mr. Luedtke also contends that the supplemental instruction confused the jury because it overlapped other instructions or intruded upon the instructions previously agreed upon and given. Specifically, Mr. Luedtke claims that the supplemental instruction infringed upon the definition of intent provided by instruction 19.[2] We disagree.

[¶ 35] The supplemental instruction provides a definition of "intent to defraud" that is not contained in instruction 19 or elsewhere in the jury instructions. The instruction does not conflict with any other instruction. The jury was specifically reminded by the district court that they must continue to review and apply the "instructions together as a whole." Based upon the foregoing, we are unable to find any prejudicial error to Mr. Luedtke predicated upon the supplemental instruction provided to the jury.

### C. Motion for New Trial

 [¶ 36] We review the decision to grant or deny a motion for new trial by applying an abuse of discretion standard. *Burton v. State*, 2002 WY 71, ¶ 12, 46 P.3d 309, ¶ 12 (Wyo.2002). Mr. Luedtke contends that the district court abused its discretion in denying his motion for a new trial. He supports his contention by reiterating the arguments which he advanced regarding the testimony of Dr. Murray and the supplemental jury instruction. He also asserts cumulative error. His claim of cumulative error rests upon these same two issues. A claim of cumulative error cannot be recognized where there is no underlying error to support it. *Young v. State*, 849 P.2d 754, 767 (Wyo.1993). Similarly, because we have rejected Mr. Luedtke's claims of error regarding the testi-

mony of Dr. Murray and the supplemental jury instruction, we find no abuse of discretion in the district court's denial of Mr. Luedtke's motion for new trial.

[¶ 37] The judgment and sentence is affirmed.

---

**2.** Jury instruction 19 stated:

The intent of a person with the knowledge that a person possesses at any given time may not ordinarily be proved directly because there is no way of directly scrutinizing the workings of the human mind. In determining the issue of what a person knew or what a person intended at a particular time, you may consider statements made or acts done or omitted by that person and all other facts and circum-

stances received in evidence which may aid in your determination of that persons [sic] knowledge or intent. You may infer, but you are certainly not required to infer, that a person intends a natural and probable consequences [sic] of acts knowingly done or knowingly omitted. It is entirely up to you, however, to decide what facts to find from the evidence received during this trial.