2007 WY 152

**Timothy Floyd BUTZ, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 06–215.**

Supreme Court of Wyoming.

Sept. 21, 2007.

---

Representing Appellant: Diane Lozano, State Public Defender, PDP; Donna D. Domonkos, Appellate Counsel; Diane Courselle, Director, DAP; Patricia Lara, Student Intern, DAP. Argument by Ms. Lara.

Representing Appellee: Patrick J. Crank, Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Leda M. Pojman, Assistant Attorney General. Argument by Ms. Pojman.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

KITE, Justice.

[¶ 1] Mr. Butz challenges his conviction for endangering his children by knowingly and willfully allowing them to remain in a dwelling where he knew methamphetamine was possessed. He claims there was insufficient evidence to justify the jury's finding that the State proved the "knowingly and willfully" element of the crime beyond a reasonable doubt and the jury was not properly instructed on that element. Mr. Butz also contends the prosecutor committed misconduct when he made an inaccurate statement about the evidence during the rebuttal portion of his closing argument.

[¶ 2] We conclude there was sufficient evidence to support the jury's verdict and the jury instructions were not erroneous. In addition, although the prosecutor misstated the trial evidence, we conclude Mr. Butz was not prejudiced. Consequently, we affirm.

## ISSUES

[¶ 3] Mr. Butz presents the following issues on appeal:

[1.] Was there sufficient evidence to demonstrate that Mr. Butz knowingly and willfully permitted his daughters to remain in a room or dwelling where methamphetamine was possessed when the State's evidence showed that, while he and his daughters were helping a friend pack up his house, Mr. Butz unexpectedly came upon a small baggie of methamphetamine, and that baggie was placed in a different room than the one in which his daughters remained?

[2.] Did the trial court commit plain error when it did not instruct the jury on the definition of "knowingly"—a key element of the child endangerment statute?

[3.] Did prosecutorial misconduct occur when in summation the prosecutor relied upon facts that had never been presented to the jury; was this conduct likely to mislead the jury and to result in a conviction based upon improper outside factors in violation of Mr. Butz's due process rights?

The State presents the same issues, phrased somewhat differently.

## FACTS

[¶ 4] Mr. Butz worked as a handyman for David Raths, who is legally blind. Mr. Raths used marijuana and methamphetamine and sold methamphetamine. Mr. Butz informed Mr. Raths that he did not like methamphetamine. Mr. Raths told Mr. Butz that, if he would continue to help him, he would cease his involvement with methamphetamine.

[¶ 5] Mr. Butz apparently invited Mr. Raths to move into the Butz family home. On August 2, 2005, Mr. Butz and his two daughters, ages 11 and 13, traveled from Billings, Montana to Mr. Raths' home in Sheridan, Wyoming to pack his belongings. Mr. Raths did not accompany them that day.

[¶ 6] Sheridan County law enforcement had been investigating Mr. Raths' involvement with illegal drugs. When officers observed that he was moving, they secured a warrant to search his home. Law enforcement executed the search warrant on the evening of August 2, 2005. The Butz family was still there when the officers arrived to search the home. The officers found the girls in a spare bedroom, watching television and eating dinner. While searching Mr. Raths' bedroom, officers discovered a plastic tray sitting atop a tobacco can. There was a small shard of methamphetamine on the plastic tray. The officers also found a bag containing a small amount of methamphetamine inside the tobacco can.

[¶ 7] One of Mr. Butz's daughters identified the tobacco can as belonging to her father. An officer asked Mr. Butz about the can and the methamphetamine found inside of it. Mr. Butz said that he had found the packet of methamphetamine behind the freezer in the house earlier in the day and had secured it in the can "for the time being." Mr. Butz was arrested and charged with child endangerment, in violation of Wyo. Stat. Ann. § 6–4–405(b) (LexisNexis 2007), for allowing his daughters to remain in a dwelling where methamphetamine was possessed.

[¶ 8] After a trial in April 2006, the jury returned a guilty verdict. The district court entered a judgment and sentence, and Mr. Butz appealed.

## DISCUSSION

### 1. *"Knowingly and Willfully" Element*

[¶ 9] Mr. Butz's first two issues pertain to the "knowingly and willfully" language of

§ 6–4–405(b). The full text of the statutory section states:

> (b) No person having the care or custody of a child shall knowingly and willfully permit the child to remain in a room, dwelling or vehicle where that person knows that methamphetamine is possessed, stored or ingested.

Section 6–4–405(b).

### a. *Sufficiency of the Evidence*

[¶ 10] Mr. Butz claims the State did not present sufficient evidence to prove the "knowingly and willfully" element of the crime. In determining whether there was sufficient trial evidence to sustain a conviction, we apply the following standard of review:

> [W]e examine and accept as true the State's evidence and all reasonable inferences which can be drawn from it. We do not consider conflicting evidence presented by the defendant. We do not substitute our judgment for that of the jury; rather, we determine whether a jury could have reasonably concluded each of the elements of the crime was proven beyond a reasonable doubt. This standard applies whether the supporting evidence is direct or circumstantial.

*Martin v. State*, 2007 WY 2, ¶ 32, 149 P.3d 707, 715 (Wyo.2007), citing *Butcher v. State*, 2005 WY 146, ¶ 16, 123 P.3d 543, 549 (Wyo. 2005).

[¶ 11] The district court instructed the jury on the elements of the charged crime, as follows:

Instruction No. 4

The elements of the crime of Endangering Children, as charged in this case are:

1. On or about the 2nd day of August, 2005.

2. In Sheridan County, Wyoming.

3. The Defendant,

4. Having the care and custody of a child

5. Knowingly and willingly (sic) [1]

---

1. Mr. Butz does not raise any issue regarding the typographical error in the instruction, whereby the jury was instructed that he had to act "know- ingly and willingly" as opposed to "knowingly and willfully," as stated in the statute.

6. Permitted the child to remain in a dwelling where the Defendant knew that methamphetamine was possessed.

If you find from your consideration of all the evidence that each of these elements has been proven beyond a reasonable doubt, then you should find the defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that any of these elements has not been proved beyond a reasonable doubt, then you should find the defendant not guilty.

(footnote added).

[¶ 12] Mr. Butz argues: "The State should have been required to prove that (1) Mr. Butz knew that methamphetamine was possessed in the room where his daughters were present; and (2) that he knowingly and willfully endangered his daughters by permitting them to remain in that room." Using this standard, Mr. Butz claims that there was insufficient evidence to convict him because there was no evidence he knowingly and willfully placed his children in danger. In fact, he argues, the evidence is to the contrary because he secured the methamphetamine in the tobacco can and placed it away from his daughters in Mr. Raths' bedroom.

[¶ 13] Mr. Butz's argument implicates the difference between general and specific intent crimes. This distinction has been described as follows:

> When the statute sets out the offense with only a description of the particular unlawful act, without reference to intent to do a further act or achieve a future consequence, the trial judge asks the jury whether the defendant intended to do the outlawed act. Such intention is general intent. When the statutory definition of the crime refers to an intent to do some further act or attain some additional consequence, the offense is considered to be a specific intent crime and then that question must be asked of the jury.

*Britt v. State,* 752 P.2d 426, 430 (Wyo.1988), quoting *Dorador v. State,* 573 P.2d 839, 843 (Wyo.1978).

[¶ 14] We have consistently ruled that criminal statutes including the mental elements "knowingly" and/or "willfully" describe general intent crimes. *See, e.g., Tillett v. State,* 637 P.2d 261, 264–65 (Wyo.1981); *King v. State,* 2002 WY 27, ¶ 23, 40 P.3d 700, 706 (Wyo.2002). Mr. Butz argues, nevertheless, that we should interpret § 6–4–405(b) as requiring the State to prove that he knowingly and willfully placed his daughters in danger by allowing them to remain in the area with the methamphetamine. His interpretation urges adoption of a specific intent because it would require the State to prove that he intended a further consequence, to endanger his daughters, when he permitted them to remain in the house with the methamphetamine.

[¶ 15] Under the clear language of § 6–4–405(b), the State was simply required to prove that Mr. Butz knowingly and willfully permitted the children to remain in a place where he knew methamphetamine was possessed. The statute contains no additional requirement that the State prove he knowingly and willfully placed the children in danger by allowing them to remain in the place. Section 6–4–405(b), therefore, describes a general intent crime. The legislature made the policy determination that performing the act forbidden by the statute, i.e. permitting a child to remain in an area where the person knows methamphetamine is possessed, with the requisite mental state, i.e., knowingly and willfully, was sufficient to endanger the child and, consequently, legislated against it. Mr. Butz's position that the State should be required to prove he knowingly and willfully placed the children in danger enlarges the State's burden under § 6–4–405(b) beyond that imposed by the legislature.

[¶ 16] Mr. Butz admitted that he had found the packet of methamphetamine and placed it in the tobacco can; thus, the trial evidence clearly showed that he knew methamphetamine was possessed in the home. The undisputed evidence established that Mr. Butz brought his daughters with him to Mr. Raths' house on August 2, 2005, and they were still in the home when law enforcement arrived to execute the search warrant, which was after Mr. Butz had al-

ready found the packet of methamphetamine and placed it in the tobacco can. Consequently, the trial evidence, together with the reasonable inferences flowing from it, was clearly sufficient to justify the jury's finding that the State had proven beyond a reasonable doubt he knowingly and willfully allowed the children to remain in the dwelling where he knew methamphetamine was possessed.

### b. Jury Instructions

[¶17] Jury Instruction No. 4 described the elements of the charged crime in accordance with the statutory language, as tailored to the charge alleged in the case. The district court also instructed the jury on the definitions of "child" and "possession." It did not, however, instruct the jury on the meaning of the term "knowingly." Mr. Butz argues on appeal the district court erred by failing to instruct the jury about the technical definition of the word "knowingly."

[¶18] Mr. Butz did not offer an instruction defining the term or otherwise object to the jury instructions. Consequently, we review his claim using the plain error standard. *Lapp v. State,* 2004 WY 142, ¶7, 100 P.3d 862, 864 (Wyo.2004). Under the plain error standard, the appellant must "show a clear and unequivocal rule of law was violated, the violation clearly appeared in the record, and the violation resulted in denial of a substantial right to [his] material prejudice." *Id. See also, Simmons v. State,* 2003 WY 84, ¶25, 72 P.3d 803, 812 (Wyo. 2003).

> We afford significant deference to the trial court in instructing the jury:
>
>> "The trial judge is afforded latitude to tailor the instructions to the facts of the case, and reversible error will not be found as long as the instructions when viewed as a whole and in the context of the entire trial fairly and adequately cover the issues."
>
> *Wilson v. State,* 14 P.3d 912, 915 (Wyo. 2000) (citations omitted).

*Lapp,* ¶7, 100 P.3d at 864–65. Nevertheless, a fundamental error occurs when the trial court fails to give an instruction on an essential element of a criminal offense. *Id.,* ¶10,

100 P.3d at 865. "The test of whether a jury has been properly instructed on the necessary elements of a crime is whether the instructions leave no doubt as to the circumstances under which the crime can be found to have been committed." *Id.,* citing *Wheaton v. State,* 2003 WY 56, ¶20, 68 P.3d 1167, 1176 (Wyo.2003).

[¶19] We have also articulated rules regarding the trial court's duty to define terms in jury instructions.

> A court need not give an instruction defining a term unless it has a technical legal meaning so different from its ordinary meaning that the jury, without further explanation, would misunderstand its import in relation to the factual circumstances. Prejudicial error must be demonstrated by appellant and prejudice will not be presumed unless the instruction confused or misled the jury with respect to the proper principles of law. Failure to instruct properly on an element of a crime does not constitute plain error where that element is not contested at trial or where evidence of the defendant's guilt is overwhelming.

*Wilson,* 14 P.3d at 916.

*Lapp,* ¶10, 100 P.3d at 865.

[¶20] The ordinary meaning of "knowingly" is "with awareness, deliberateness, or intention" as distinguished from inadvertently or involuntarily. Webster's Third New Int'l Dictionary 1252 (2002). Similarly, "willfully means intentionally, knowingly, purposely, voluntarily, consciously, deliberately, and without justifiable excuse, as distinguished from carelessly, inadvertently, accidentally, negligently, heedlessly or thoughtlessly." *Dean v. State,* 668 P.2d 639, 642 (Wyo.1983), quoting *Matter of Adoption of CCT,* 640 P.2d 73, 76 (Wyo.1982). *See also, Crozier v. State,* 723 P.2d 42, 54 (Wyo.1986).

[¶21] In *Schmidt v. State,* 2001 WY 73, ¶24, 29 P.3d 76, 83 (Wyo.2001), we said, in the context of the indecent liberties statute, Wyo. Stat. Ann. § 14–3–105 (LexisNexis 2001), the district court did not commit plain error by failing to define the term "knowingly" in the jury instructions because that term does not have a technical meaning. We have also held that the term "willfully" is suffi-

ciently self-explanatory that no additional definition in jury instructions is necessary. *See, e.g., Durham v. State*, 422 P.2d 691, 692 (Wyo.1967). Our precedent, therefore, makes it clear that the statutory terms "knowingly" and "willfully" generally do not have specialized meanings any different from their common meanings.

[¶ 22] Despite this precedent, Mr. Butz argues the term "knowingly" has a technical legal meaning in the context of § 6–4–405(b) because the term is used in two different senses in the statute. Section 6–4–405(b) criminalizes **knowingly** and willfully permitting a child to remain in a room, dwelling or vehicle where the defendant **knows** methamphetamine is possessed, stored or ingested. Mr. Butz's argument that the legislature's use of the two terms, "knowingly" and "know," in the statute requires that "knowingly" be defined for the jury is not convincing. Reasonable jurors, being familiar with the English language, would understand the instruction in accordance with the ordinary meanings and uses of the words. They would certainly discern that the State was required to prove Mr. Butz knew, or was actually aware, methamphetamine was present and he knowingly and willfully, i.e. deliberately, allowed the children to remain in the dwelling.

[¶ 23] Mr. Butz also reiterates, in his jury instruction argument, his earlier contention that the "knowingly and willfully" element requires a showing that he placed the children in danger. We have already rejected Mr. Butz's argument that the terms "knowingly and willfully" as used in § 6–4–405(b) imposed a specific intent requirement that the children be endangered.

[¶ 24] Mr. Butz has not convinced us the term "knowingly" in the child endangerment statute has a technical definition "so different from its ordinary meaning that the jury, without further explanation, would misunderstand its import in relation to the factual circumstances." *Wilson*, 14 P.3d at 916. The district court did not violate a clear and unequivocal rule of law by failing to instruct the jury on a "technical" meaning of the intent element of the crime.

## 2. *Prosecutorial Misconduct*

[¶ 25] Mr. Butz claims the prosecutor committed misconduct when he misstated the facts in evidence during the rebuttal portion of his closing argument.

"In reviewing a claim of prosecutorial misconduct in closing argument, the court looks at the entire record to determine whether the defendant's case was so prejudiced by the improper comments as to result in the denial of a fair trial." *Burton v. State*, 2002 WY 71, ¶ 11, 46 P.3d 309, ¶ 11 (Wyo.2002). We judge the challenged comments in the context of the prosecutor's entire argument, considering the context of the statements and comparing them with the evidence produced at the trial. *Id.* The burden of establishing prosecutorial misconduct rests upon the appellant who raises the issue.

*Wilks v. State*, 2002 WY 100, ¶ 26, 49 P.3d 975, 986 (Wyo.2002). We review Mr. Butz's claim of prosecutorial misconduct for plain error because he did not object to the prosecutor's statements at trial.

[¶ 26] The two statements Mr. Butz challenges were made during the rebuttal portion of the prosecutor's closing argument. The prosecutor began his rebuttal argument by stating:

Ladies and Gentlemen, the defense suggested that Tim Butz did not want to be caught in possession. Let's take a look at that one fairly quickly. **It is found in the freezer, out in the garage.** Did he leave it there on the floor where it is not associated with any individual? No.

(emphasis added). Later in his argument, the prosecutor remarked:

And consider … what the defendant was doing in putting [the methamphetamine] in the tobacco can, was that he was trying to hide it from his kids, protect his kids in some way. **Well, he found it out in the garage behind the freezer. So does he toss it into the garbage bag there, or leave it in the garage?** No.

(emphasis added).

[¶ 27] The trial evidence established that Mr. Butz found the methamphetamine behind the freezer in the house, rather than in

the garage. Thus, the prosecutor's statements were incorrect. We have said that prosecutors must limit their argument to the evidence admitted at trial and reasonable inferences that may be drawn from that evidence. *See, e.g., Condra v. State,* 2004 WY 131, ¶ 22, 100 P.3d 386, 392 (Wyo.2004); *Marshall v. State,* 2005 WY 164, ¶ 16, 125 P.3d 269, 275 (Wyo.2005). The prosecutor's misstatement of the evidence in this case clearly appeared in the record and was a violation of a clear and unequivocal rule of law. Thus, the first two elements of the plain error standard are arguably satisfied here.

[¶ 28] We turn then to the third element of our plain error test—whether Mr. Butz has demonstrated he has been denied a substantial right resulting in material prejudice.[2] Of course, it is unprofessional for a prosecutor to intentionally misstate the evidence during his summation. *Wilks,* ¶ 27, 49 P.3d at 987, quoting *Trujillo v. State,* 2002 WY 51, ¶ 5, 44 P.3d 22, 24 (Wyo.2002) which cited I A.B.A. Standards for Criminal Justice 3–5.8 at 3.87 to 3.88 (2d ed.1980). Evidence was admitted at trial indicating that two freezers were located on the premises—one in the house and one in the garage. Under these circumstances, there is no indication the prosecutor's misstatement that Mr. Butz found the methamphetamine behind the garage freezer instead of the house freezer was intentional.

[¶ 29] Mr. Butz claims that the misstatement about the location of the methamphetamine was particularly critical because there was no evidence that Mr. Butz was aware of any other drugs in the house besides the methamphetamine he secured in the tobacco

can. Thus, according to him, the "question [of] whether Mr. Butz 'knowingly' permitted his daughters to remain in a room or dwelling where methamphetamine was present depended largely on what he knew about and did with the methamphetamine in the baggie."

[¶ 30] We are not convinced the prosecutor's statements prejudiced Mr. Butz. Whether Mr. Butz found the methamphetamine in the garage and brought it back into the house to hide it in the tobacco can or found it behind the freezer in the house and then secured it in the can is irrelevant to a determination of whether he was guilty of violating § 6–4–405(b). Either way, he knew there was methamphetamine in the dwelling and he knowingly and willfully allowed his daughters to remain there. The misstatement is significant only if we accept Mr. Butz's argument that the State was required to prove he "endangered" his daughters, a position that we have already rejected. Moreover, the jury was specifically instructed that the attorneys' arguments were not "evidence" in the case. Under these circumstances, there is no basis for concluding Mr. Butz was prejudiced by the prosecutor's misstatement.

[¶ 31] Affirmed.

---

**2.** In his reply brief, Mr. Butz claims: "The State makes the new argument that Mr. Butz has not adequately demonstrated that the prosecutor's misstatement of the evidence prejudiced Mr. Butz." He apparently argues that we should overrule our precedent requiring the party asserting plain error to show prejudice and rule that, if the first two elements of the plain error standard are satisfied, the State is required to show an absence of prejudice. First of all, we do not agree the State presented a new issue by simply arguing the elements of the plain error standard. Accordingly, under W.R.A.P. 7.03, Mr. Butz's argument was not properly raised in his reply brief. Moreover, the doctrine of *stare*

*decisis* requires us to resist overruling established precedent. *Stare decisis* is "an important principle which furthers the 'evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process.'" *SLB v. JEO,* 2006 WY 74, ¶ 6, 136 P.3d 797, 799 (Wyo.2006), quoting *Goodrich v. Stobbe,* 908 P.2d 416, 420 (Wyo. 1995). Mr. Butz's relatively short argument in his reply brief does not convince us that we should overrule our well-established precedent that the party claiming plain error has the burden of showing prejudice.