# IN THE SUPREME COURT, STATE OF WYOMING

# 2022 WY 41

OCTOBER TERM, A.D. 2021

March 22, 2022

MELINDA IRENE REYES,

Appellant
(Defendant),

v.

S-21-0206

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Albany County*
*The Honorable Tori R.A. Kricken, Judge*

*Representing Appellant:*

    Office of the State Public Defender: Diane M. Lozano, State Public Defender; Kirk A. Morgan, Chief Appellate Counsel.

*Representing Appellee:*

    Bridget L. Hill, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Joshua C. Eames, Senior Assistant Attorney General; Timothy P. Zintak, Senior Assistant Attorney General.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FENN, Justice.**

[¶1]    After a bench trial, the district court found Melinda Reyes guilty of felony child endangerment.  On appeal, Ms. Reyes contends the district court erred by denying her motion for acquittal because the evidence was insufficient to support her conviction.  We affirm.

## ISSUE

[¶2]    The issue is:

> 1.    Did the district court err when it denied Appellant's motion for judgment of acquittal, or was the evidence sufficient to convict Ms. Reyes of child endangerment?

## FACTS

[¶3]    Special Agent Aaron Gallegos of the Wyoming Division of Criminal Investigation (DCI) was investigating the distribution of methamphetamine between Laramie and Cheyenne, Wyoming.  During this investigation, Special Agent Gallegos arrested Joshua Cole for felony methamphetamine distribution.  In order to reduce his charges, Mr. Cole agreed to work with DCI as a confidential informant.  All of his initial charges were dismissed as a result of his work as a confidential informant.  Prior to his arrest, Mr. Cole regularly purchased small amounts of methamphetamine from Kenneth "Kenny" Degler.  After learning this information, Special Agent Gallegos decided to have Mr. Cole attempt to make some controlled buys of methamphetamine from Mr. Degler.

[¶4]    The first attempted controlled buy occurred on December 26, 2019.  Pursuant to DCI's standard practices, Mr. Cole was searched for drugs prior to the attempted controlled buy.  Mr. Cole was also fitted with a wire that was monitored by Special Agent Gallegos.  Mr. Cole was then given prerecorded buy funds to purchase drugs from Mr. Degler.  Mr. Cole did not have his own vehicle, so Special Agent Gallegos dropped him off a short distance from Mr. Degler's residence.

[¶5]    When Mr. Cole arrived at Mr. Degler's trailer, he discovered Mr. Degler, his girlfriend, Melinda Reyes, and their five-year-old son, M.J., were present in the residence.  Another adult male, who was unknown to Mr. Cole, was also present.  Mr. Cole greeted M.J. by saying "Hey Buddy," and then he went to the bedroom Mr. Degler and Ms. Reyes shared.  When Mr. Cole got to the bedroom, Ms. Reyes was actively searching the room for methamphetamine.  While Ms. Reyes continued her search, Mr. Degler offered to smoke methamphetamine with Mr. Cole and the other adult male.  Mr. Cole decided to leave when it appeared they did not actually have any methamphetamine to sell, and it

1

seemed like Mr. Degler was going to smoke methamphetamine with the other man. Mr. Cole told Mr. Degler and Ms. Reyes he would come back.

[¶6]    On January 7, 2020, Mr. Cole attempted another controlled buy from Mr. Degler. He was searched by DCI prior to this attempt and was again fitted with a wire. Mr. Cole was dropped off a short distance from Mr. Degler's residence, and Special Agent Gallegos monitored the audio from Mr. Cole's wire. When Mr. Cole entered the residence, he saw Mr. Degler and Ms. Reyes seated on the couch. Mr. Cole had a brief conversation with Ms. Reyes, who then got up and went into the kitchen. Mr. Cole then counted out his buy money in the open and gave it to Mr. Degler in exchange for a baggie of methamphetamine.

[¶7]    After the exchange, Mr. Cole left the residence and met up with Special Agent Gallegos. Mr. Cole gave the methamphetamine to Special Agent Gallegos and was debriefed about what had occurred inside of the residence. The substance in the baggie tested presumptive positive for methamphetamine, and it was later sent to the State crime lab for confirmation.

[¶8]    On January 8, 2020, Mr. Cole conducted another controlled buy from Mr. Degler. Again, Mr. Cole was searched and fitted with a wire prior to being dropped off a short distance from the residence. Special Agent Gallegos attempted to monitor the wire, but there was a problem with his equipment. However, Special Agent Mathew Leibovitz was able to hear the audio, and he monitored the wire on this occasion. When Mr. Cole entered the trailer, he saw Mr. Degler, Ms. Reyes, and M.J. all seated on the couch together. Mr. Cole made small talk with both Mr. Degler and Ms. Reyes, including talking with Ms. Reyes about how their children were acquainted. Mr. Cole could see Mr. Degler had a baggie of methamphetamine palmed in his hand, so he began to count out the money for the exchange. Mr. Cole counted out the money in front of Mr. Degler, Ms. Reyes, and M.J. He then handed the money to Mr. Degler. In exchange, Mr. Degler gave Mr. Cole the baggie of methamphetamine. After the exchange, Mr. Cole left the residence.

[¶9]    Mr. Cole turned the methamphetamine over to Special Agent Gallegos. The substance in the baggie tested presumptive positive for methamphetamine, and it was later sent to the State crime lab for confirmation. During his debrief, Mr. Cole told Special Agent Gallegos the drug transaction had occurred in front of M.J. Special Agent Leibovitz confirmed with Special Agent Gallegos he had heard both Ms. Reyes's voice and the voice of a male child while listening to the wire. After learning the transaction had occurred in the presence of a minor, Special Agent Gallegos decided to end the investigation and take action to ensure M.J.'s safety. He immediately requested a search warrant for the residence.

[¶10]  Special Agent Gallegos executed the search warrant on the residence on January 9, 2020. When he arrived, Ms. Reyes was the only person present. M.J. was at school when the warrant was executed. Special Agent Gallegos searched the bedroom shared by Mr.

Degler and Ms. Reyes. Inside Ms. Reyes's nightstand, he found a marijuana pipe. On Mr. Degler's nightstand, he discovered a methamphetamine pipe, a pill bottle with methamphetamine inside of it, and a small jeweler's bag of methamphetamine. Special Agent Gallegos also searched the master bathroom where he found a digital scale that had been secreted behind a makeshift door in the linen closet. While searching the residence, Special Agent Gallegos also found a child's bed, children's toys and clothing, and children's toothpaste. The pill bottle and jeweler's bag were sent to the State Crime Lab, and it was confirmed that those items contained methamphetamine.

[¶11]  Mr. Degler and Ms. Reyes were both arrested. Ms. Reyes was initially charged with five counts: felony child endangerment under Wyo. Stat. Ann. § 6-4-405(b); felony possession with intent to deliver methamphetamine under § 35-7-1031(a)(i); felony conspiracy to deliver methamphetamine under § 35-7-1031(a)(i) and § 35-7-1042; misdemeanor child endangerment under § 6-4-403(a)(ii);[1] and misdemeanor marijuana possession under § 35-7-1031(c)(i)(A). The felony conspiracy charge was not bound over for trial.

[¶12]  Ms. Reyes was released on bond on February 20, 2020. As a condition of her bond, she was prohibited from any contact with Mr. Degler. On June 25, 2020, the State moved to revoke Ms. Reyes's bond, on the grounds she had spoken with Mr. Degler on the phone more than one hundred times. Ms. Reyes's whereabouts were unknown at that time, and a warrant was issued for her arrest. On July 16, 2020, the district court ordered Ms. Reyes to appear for a status conference the following day, however, she failed to appear.

[¶13]  Ms. Reyes was arrested on September 13, 2020. On October 7, 2020, the district court held a bond revocation hearing. Ms. Reyes admitted to the allegations contained in the State's motion and her bond was revoked. Also on October 7, 2020, she waived her right to a speedy trial. On October 27, 2020, Ms. Reyes requested a change of plea hearing, but she later decided against that course of action and asked to proceed to trial. Ms. Reyes subsequently waived her right to a jury trial and requested a bench trial pursuant to W.R.Cr.P. 23. The State consented to a bench trial. Shortly before the trial, the State filed an *Amended Information* eliminating the felony possession with intent to deliver charge.

[¶14]  The trial commenced on January 14, 2021. At the close of the State's case, Ms. Reyes moved for a judgment of acquittal alleging the State had failed to provide sufficient evidence of all the elements necessary to convict her of the charged offenses. The district court denied the motion. After being advised of her rights by the district court, Ms. Reyes decided not to call any witnesses, present any evidence, or testify in her own defense.

---

[1] This count related to the conditions of the home. At the time the warrant was executed, the home was dirty and cluttered, and there were several sharp objects, like an axe and knives, that would have been easily accessible by M.J. There was also an allegation that the residence did not have any heat, and the oven was being used to heat the home.

Although Ms. Reyes had not requested any specific findings pursuant to W.R.Cr.P. 23(c), the district court issued a detailed *Court's Judgment and Verdict*. The district court acquitted Ms. Reyes of both misdemeanor charges but found her guilty of felony child endangerment. The district court sentenced Ms. Reyes to three to five years in prison, suspended in lieu of a split sentence of one year in jail followed by three years of probation.[2] This appeal followed.

## STANDARD OF REVIEW

[¶15] When reviewing the denial of a motion for judgment of acquittal, we apply the following standard of review:

> We review a motion for judgment of acquittal in the same light as the district court and apply the same standard as that used when an appeal claims insufficient evidence to convict. *Foltz v. State*, 2017 WY 155, ¶ 10, 407 P.3d 398, 401 (Wyo. 2017) (citation omitted). Accordingly, we accept the State's evidence as true, including all logical and reasonable inferences which can be drawn from it. *Id.* (citation omitted). We do not consider the defendant's conflicting evidence and we do not reweigh the evidence or re-examine the witnesses' credibility. *Id.* (citation omitted). We simply determine whether the evidence – direct or circumstantial – could reasonably support the jury's verdict. *Id.* ¶ 10, 407 P.3d at 401-02 (citation omitted). Applying this standard, a motion for judgment of acquittal is granted only if "a reasonable juror must have a reasonable doubt as to the existence of any of the essential elements of the crime." *Id.* ¶ 10, 407 P.3d at 401 (citation omitted).

*Martinez v. State*, 2018 WY 147, ¶ 18, 432 P.3d 493, 498 (Wyo. 2018). The fact that the trial in this case was a bench trial does not change this analysis. *Romero v. State*, 2010 WY 84, ¶ 6, 233 P.3d 951, 953 (Wyo. 2010) (citing *Fitzgerald v. State*, 599 P.2d 572, 574 (Wyo. 1979) ("The function of the finder of fact in [criminal] cases tried to a court is identical to that in cases tried to juries, and the same rules are applicable with respect to the standards and principles applied in appellate review.")).

---

[2] After Ms. Reyes filed her appeal, the district court reduced her jail sentence to permit her to attend an inpatient substance abuse treatment program.

**DISCUSSION**

[¶16] Ms. Reyes was convicted of child endangerment under Wyo. Stat. Ann. § 6-4-405(b) (LexisNexis 2021) which provides:

> (b) No person having the care or custody of a child shall knowingly and willfully permit the child to remain in a room, dwelling or vehicle where that person knows that methamphetamine is possessed, stored or ingested.

The State had the burden of proving every material and necessary element of the charged crime beyond a reasonable doubt. *Harper v. State*, 970 P.2d 400, 405 (Wyo. 1998). The parties agree that to convict Ms. Reyes of this charge, the State had to prove that she: 1) had care or custody of a child; 2) knowingly and willfully permitted that child to remain in a dwelling; and 3) knew that methamphetamine was possessed, stored, or ingested therein. Ms. Reyes concedes the State proved she had care or custody of M.J. However, she contends the State failed to prove the second and third elements.

[¶17] Ms. Reyes's argument focuses primarily on the discrepancies between the district court's findings of fact and the evidence presented at trial. For example, the district court incorrectly found that the second controlled buy occurred on January 8, 2020, rather than on January 7, 2020. It further found that the third controlled buy occurred on January 9, 2020, rather than January 8, 2020, even though it later correctly found that the search warrant had been executed on January 9, 2020. In addition, the district court conflated some of the events that occurred during the second controlled buy with some of those that occurred during the third controlled buy. The parties do not dispute that the district court's findings do not entirely comport with the evidence presented at the trial. However, they disagree about the extent and effect of those discrepancies. Ms. Reyes contends that due to the misstatements contained in the *Court's Judgment and Verdict*, the district court's findings were not supported by the evidence. The State contends that the minor variances between the district court's findings and the trial testimony are legally irrelevant under the sufficiency of the evidence standard of review.

[¶18] When we review a bench trial for sufficiency of the evidence, "[w]e may affirm a district court's action upon any sustainable legal ground shown in the record." *In re MC*, 2013 WY 43, ¶ 60, 299 P.3d 75, 88 (Wyo. 2013) (quoting *Bellis v. Kersey*, 2010 WY 138, ¶ 10, 241 P.3d 818, 822 (Wyo. 2010)). Therefore, even though the district court's specific findings contain some factual errors, we may affirm Ms. Reyes's conviction if it was supported by sufficient evidence. In other words, we may affirm her conviction if the evidence presented at the trial would have allowed a rational trier of fact to find the essential elements of the charged crime had been proven beyond a reasonable doubt.

[¶19]   At the trial, Mr. Cole testified Ms. Reyes was actively looking for methamphetamine during the first attempted controlled buy that occurred on December 26, 2019.  He testified as follows:

> A. I had already had a bad feeling about it as I was going into the house. I knew it wasn't going to be that he had it. So when I went to the bedroom, there was another gentleman that came in that I wasn't aware of, that I didn't know. And Kenny was trying to hand me a meth pipe and Melinda was looking for their stuff because I was going to wait for the stuff I wanted to purchase to show up and it wasn't there yet. That's when I decided to leave. So I told them that I'd be back and I left.
>
> Q. Now, when you say Melinda was looking for their stuff, what does that mean?
>
> A. He was going to smoke a bowl with me and she was looking for the methamphetamine on the bed somewhere. And he had the pipe. So, I was going to take a couple hits and they were going to load it and we were going to get high while I waited for the stuff, which would have been a normal thing.
>
> Q. How do you know that Melinda was looking for methamphetamine?
>
> A.  Because she was looking for methamphetamines [sic].
>
> Q. Was there any exchange of words about that?
>
> A. Yeah. Shit, where did I put it? You know, I mean . . .
>
> Q. This took place in Melinda and Kenny's bedroom; is that correct?
>
> A.  That's correct.

When questioned further about Ms. Reyes's participation in the search during cross-examination, Mr. Cole stated:

> Q. And your testimony was in this first attempt -- the first attempt to purchase, controlled buy, the one that was unsuccessful, I believe your testimony was that it was Ms. Reyes that was looking for methamphetamine?

6

> A. Yeah. Kenny's like, you want to smoke a bowl. He said, baby, where's the shit? She's looking for it. He's got the pipe. He wants it to be loaded so we can smoke it. That's when I was like I had to leave, I mean . . . .

Special Agent Gallegos corroborated Mr. Cole's testimony. He testified while he was listening to the wire on this occasion, he heard Mr. Degler ask Ms. Reyes something to the effect of "where's that bag?" Ms. Reyes then replied she did not know, but it had been there yesterday. Special Agent Gallegos also testified it appeared Mr. Degler and Ms. Reyes were searching for something they were missing, but they were ultimately unable to find it.

[¶20] Mr. Cole testified Ms. Reyes was present in the residence when he successfully purchased methamphetamine on January 7, 2020. Ms. Reyes was in the kitchen for most of this transaction. However, the evidence also established the kitchen was only slightly removed from the living room where this transaction occurred. No one testified M.J. was present during this transaction.

[¶21] Special Agent Gallegos and Mr. Cole both testified Ms. Reyes and M.J. were present in the home with Mr. Degler when Mr. Cole successfully purchased methamphetamine on January 8, 2020. Special Agent Leibovitz confirmed he heard Ms. Reyes's and a male child's voices while he was monitoring the wire during this transaction. Mr. Cole confirmed Ms. Reyes and M.J. were present, and he testified they were both on the couch with Mr. Degler during the transaction. In fact, he testified Ms. Reyes was sitting on Mr. Degler's lap when the exchange occurred. Mr. Cole further testified he counted out the money in front of all three of them, and then Mr. Degler handed him a baggie of methamphetamine. Mr. Cole was specifically asked if Ms. Reyes had seen this transaction occur:

> Q. And when Mr. Degler handed you the bag of methamphetamine in exchange for money, was that also in front of Melinda and the child?
>
> A. Yeah.
>
> Q. Is there any way that Melinda would not have seen what happened?
>
> A. No. It wasn't -- it was -- it wasn't a hidden thing. I mean, it was quick because of the kid being there, yes. But, no, she knew what was going on.

7

[¶22]   The State also played several audio recordings of phone calls Ms. Reyes made to her family members from the jail.  During these calls, Ms. Reyes made statements she may have suspected Mr. Degler was doing methamphetamine, but she could not control people coming by the residence.  She also stated she made him promise he would not do those types of transactions in front of her.  She did not believe she should have been charged because even if she knew what Mr. Degler was doing, there was nothing she could have done about it.  When family members suggested Ms. Reyes did not have to live with Mr. Degler, she stated she did not have any other place to live.  She claimed she had been forced to choose between staying with her mother, where she felt unsafe because of her stepfather, or going back to the trailer and living with a drug dealer.  In one of these calls, she admitted she had chosen Mr. Degler and her own happiness over her children.[3]

[¶23]   The only testimony that contradicted some of the facts outlined above was offered by Mr. Degler.  The State subpoenaed Mr. Degler, and it became abundantly clear he wanted to minimize Ms. Reyes's involvement.  His testimony was impeached on several occasions.  Mr. Degler initially claimed he was not selling drugs from December 2019 through January 2020, instead asserting he was only using both marijuana and methamphetamine during that time period.  However, he admitted he pled guilty to possession with intent to deliver in relation to his transactions with Mr. Cole.  He also admitted he used the scale found in the bathroom to make sure he was not "ripped off" during drug transactions.  Mr. Degler then admitted he stored methamphetamine in the residence at times, and he occasionally smoked it in the home.  However, he claimed he never smoked when M.J. was present.  Mr. Degler also testified Ms. Reyes was never home when he was consuming methamphetamine.  However, he then testified Ms. Reyes learned about his methamphetamine use shortly after Christmas 2019.  He claimed she had moved out of the residence with M.J. for about a week.  She then moved back in and began moving her things into the other bedroom.  Mr. Degler also initially testified Ms. Reyes was never in the room when Mr. Cole was present.  However, this testimony was impeached when the State played the audio recordings of the December 26, 2019, and January 8, 2020, controlled buys.[4]

[¶24]   Ms. Reyes argued during her motion for acquittal and again on appeal the evidence was insufficient to show she knew methamphetamine was being stored or ingested in the residence.   We disagree. Mr. Cole testified Ms. Reyes actively searched for some methamphetamine for him to buy on December 26, 2019, and she was present when he and Mr. Degler discussed smoking methamphetamine together.  In addition, Mr. Cole testified Ms. Reyes personally witnessed the methamphetamine being exchanged for money on January 8, 2020.  Further, when Special Agent Gallegos searched the residence, the

---

[3] Ms. Reyes has another child, who is older than M.J. However, this child was not living with her at the time of these events, so he was not the subject of the child endangerment charge.

[4] The district court considered this evidence only for impeachment purposes, and the recordings were not admitted as exhibits at the trial.

methamphetamine was found in plain view on the nightstand in the bedroom Ms. Reyes shared with Mr. Degler.  In addition, Mr. Degler himself testified Ms. Reyes became aware of his methamphetamine use shortly after Christmas 2019.  Considering the evidence in a light most favorable to the State, and ignoring any contrary evidence, we conclude that a reasonable factfinder could have reasonably determined Ms. Reyes knew methamphetamine was being ingested, possessed, or stored in the residence.

[¶25]   Ms. Reyes also asserts the evidence was insufficient to show she "knowingly" and "willfully" allowed M.J. to remain in a dwelling where she knew methamphetamine was stored.  This Court has consistently ruled that "criminal statutes including the mental elements 'knowingly' and/or 'willfully' describe general intent crimes." *Butz v. State*, 2007 WY 152, ¶ 14, 167 P.3d 650, 654 (Wyo. 2007) (citing *Tillette v. State*, 637 P.2d 261, 264-65 (Wyo. 1981); *King v. State*, 2002 WY 27, ¶ 23, 40 P.3d 700, 706 (Wyo. 2002)), *abrogated on other grounds by Granzer v. State*, 2008 WY 118, ¶ 20, 193 P.3d 266 (Wyo. 2008).  We have also held that "knowingly" and "willfully" do not have technical legal meanings, and their ordinary meanings apply. *Butz*, ¶¶ 19-22, 167 P.3d at 655-56. "Knowingly" means "'with awareness, deliberateness, or intention' as distinguished from inadvertently or involuntarily." *Id.* ¶ 20, 167 P.3d at 655 (quoting Webster's Third New Int'l Dictionary 1252 (2002)).  A federal court has explained that "knowingly" means "the defendant realized what she was doing and was aware of the nature of her conduct and did not act through ignorance, mistake, or accident." *United States v. Alston-Graves*, 435 F.3d 331, 337 (D.C. Cir. 2006).  Similarly, we have found "willfully" means "intentionally, knowingly, purposely, voluntarily, consciously, deliberately, and without justifiable excuse, as distinguished from carelessly, inadvertently, accidentally, negligently, heedlessly or thoughtlessly." *Butz*, ¶ 20, 167 P.3d at 655 (quoting *Dean v. State*, 668 P.2d 639, 642 (Wyo. 1983)).  The State did not need to prove Ms. Reyes intended to expose M.J. to any of the risks related to the presence of methamphetamine. *Butz*, ¶ 15, 167 P.3d at 654.  Nor did the State need to prove Ms. Reyes gave express consent or permission for M.J. to be present in the residence. *Granzer v. State*, 2010 WY 130, ¶ 11, 239 P.3d 640, 645 (Wyo. 2010).  The State only had to prove Ms. Reyes knowingly and willfully, i.e., voluntarily or consciously, allowed M.J. to remain in the residence where she knew methamphetamine was being ingested, possessed, or stored therein.

[¶26]   The evidence established M.J. was present in the residence on December 26, 2019, when Ms. Reyes was actively looking for methamphetamine, and Mr. Degler was talking about smoking methamphetamine with Mr. Cole.  M.J. was present in the residence again on January 8, 2020, when Mr. Degler sold methamphetamine to Mr. Cole in front of Ms. Reyes and M.J.  In addition, when the residence was searched, they found toys, clothing, bedding, and toothpaste, which would allow a factfinder to reasonably infer M.J. was living in the home with Mr. Degler and Ms. Reyes.  Mr. Degler testified Ms. Reyes found out about his methamphetamine use in December 2019, moved out, and then returned with M.J. approximately a week later.  Ms. Reyes's own statements on the calls she made from the jail support a finding that she chose to allow M.J. to be present in the residence, even

though she knew Mr. Degler was a "drug dealer." Therefore, a factfinder could have reasonably determined Ms. Reyes knowingly and voluntarily allowed M.J. to remain in a dwelling where she knew methamphetamine was being ingested, possessed, or stored.

[¶27] Ms. Reyes argued at trial and again in a footnote in her brief that her conduct could not have been willful because she had limited means, and she had nowhere else to live. To the extent this is intended to be an argument Ms. Reyes acted under duress, it was made without cogent argument or citation to pertinent authority, and we therefore decline to address it. *Silva v. State*, 2014 WY 155, ¶ 7, 338 P.3d 934, 936 (Wyo. 2014) (quoting *Kinstler v. RTB South Greeley, LTD., LLC*, 2007 WY 98, ¶ 10, 160 P.3d 1125, 1128 (Wyo. 2007).

[¶28] After applying the appropriate standard of review to the evidence presented at the trial, we hold that a factfinder reasonably and rationally could have concluded the State met its burden of proving all the essential elements of child endangerment beyond a reasonable doubt. Because the State presented sufficient evidence to sustain a conviction for child endangerment, it was not an error for the district court to deny Ms. Reyes's motion for judgment of acquittal.

## CONCLUSION

[¶29] We conclude the district court did not err by denying the motion for acquittal. We further find that although there were some errors in the district court's findings of fact, sufficient evidence exists to support Ms. Reyes's conviction for child endangerment. Affirmed.